# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY | : | **Case No. 1:02CV16000** |
| CENTER, INC., EQUIPMENT | : | |
| LEASE LITIGATION | : | **(MDL Docket No. 1490)** |
| | : | |
| | : | **JUDGE O'MALLEY** |
| | : | |
| | : | **MEMORANDUM AND ORDER** |
| | : | |
| | : | **This Order Relates To Case No.** |
| | : | **02CV16014** |

The dispute in these actions centers around the Sureties' liability on various surety bonds issued in connection with certain transactions between the Banks[1] and Commercial Money Center, Inc. ("CMC"). CMC's business purportedly involved the leasing of equipment and vehicles to numerous lessees in exchange for lease payments. CMC then pooled the leases and sold them to institutional investors. Apparently, the majority of CMC's leasing business was a sham, and the Banks claim millions of dollars in losses from these transactions. The Banks now sue the Sureties, seeking to recover on the surety bonds associated with the transactions. The Sureties raise CMC's fraud as a defense to the Banks' claims and seek to rescind the surety bond transactions based upon fraud in the inducement.[2]

This action is before the Court upon the motion of JPMorgan Chase Bank, N.A., successor by merger to Bank One, N.A. ("Bank One") for partial summary judgment against Safeco Insurance Company of America ("Safeco"), filed on February 15, 2008 (02-16014, Doc.

---

[1] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Court's Consolidated Rulings issued August 19, 2005 (Docs. 1708, 1709).

[2] The Court does not summarize here the entirety of the complicated factual scenario involved in these cases. Rather, the Court refers the reader to its two Consolidated Rulings on the numerous Motions for Judgment on the Pleadings, issued August 19, 2005 (02-16000, Docs. 1708, 1709).

46).  Pursuant to its motion, Bank One seeks judgment dismissing Count Three of Safeco's counterclaim, which seeks rescission of the Safeco bonds and SSAs based on Safeco's failure to tender the premium and collateral reserve payments received, as a prerequisite to Safeco's maintenance of the rescission claim.[3]  The Court carefully has considered the parties' briefing and exhibits with respect to this issue.  For the reasons set forth herein, Bank One's motion for summary judgment on Count Three of Safeco's Counterclaim is <u>denied</u>.

## I.     BACKGROUND

Bank One was a Cleveland-based national banking association, which agreed in 1999 and 2000 to lend funds to two entities, Guardian Capital II LLC and Guardian Capital III LLC (collectively, the "Guardian Entities") for the purpose of purchasing lease payment streams and related assets from two lease pools in the lease bond program operated by CMC.   Each loan was evidenced by a cognovit note, and Bank One's loans were to be repaid from the monthly payment streams associated with the leases.

For each transaction, Safeco issued lease bonds guaranteeing the leases and/or the payment streams, and the relevant Guardian Entity entered into a Sale and Servicing Agreement ("SSA") with Safeco and CMC.  As security for each loan, each Guardian Entity assigned to Bank One a security interest in the bonds through a Notice of Assignment, and also entered into a "Credit and Security Agreement" with Bank One.   The Credit and Security Agreements

---

[3] In its motion, Bank One also sought partial summary judgment declaring that Bank One has standing to assert in its own name all right, title and interest of its borrowers and assignors, Guardian Capital II LLC and Guardian Capital III LLC, in the Safeco Bonds and the Sale and Servicing Agreements, and denying Safeco's Fifth Affirmative Defense on that basis.  In its opposition memorandum filed on April 15, 2008 (Doc. 48), however, Safeco stated that it did not intend to pursue its Fifth Affirmative Defense.  Subsequently, on April 21, 2008, with the consent of Bank One, Safeco filed a Notice of Amendment of its Second Amended Answer, which formally withdrew Safeco's Fifth Affirmative Defense.  Presumably, Safeco's withdrawal of its Fifth Affirmative Defense resolved this issue between the parties.  Accordingly, the Court does not further address this issue.

granted Bank One a security interest in (1) the leases, including the right to receive all scheduled payments under the leases; (2) the surety bonds associated with each lease transaction; and (3) the relevant SSAs, all of which were included within the broad definition of "collateral."

Payment of premiums for Safeco's lease bonds occurred after the closing of the transactions.  After each closing, Bank One wired the loan funds to CMC, in an amount equal to the purchase price for the lease pool.  Upon receipt of the loan funds, CMC delivered the bond premium, as well as collateral reserve payments, to Anthony & Morgan (A&M), broker and attorney-in-fact for the Sureties.  A&M then transferred the bond premium payments (less its commission) to Safeco, and transferred the entirety of the collateral reserve payments to Safeco.

The transactions were structured in such a way that the monthly income stream to Bank One on each lease pool was greater than the monthly payment that the relevant Guardian Entity was required to make to Bank One.  Bank One would remit any monthly excess to the Guardian Entities, thus permitting the Guardian Entities to profit from the transactions.  After CMC collapsed and payments on the lease pools ceased, the failure of Bank One to receive the monthly income stream from the lease pools caused defaults by the Guardian Entities in their monthly payments to Bank One.

Bank One then commenced this action against Safeco, seeking to recover on the lease bonds.  While the MDL litigation was pending, Bank One obtained judgments against the Guardian Entities for the accelerated amounts owed on the cognovit notes.  Safeco has filed counterclaims against Bank One in this action.  Count Three of Safeco's counterclaims seeks rescission of the lease bonds and SSAs executed by Safeco, based primarily upon the fraud of CMC, as well as certain alleged nondisclosures by Bank One and the Guardian Entities.

Bank One seeks dismissal of Safeco's rescission claim, on the grounds that Safeco has

failed to establish the prerequisites for maintenance of a rescission claim.  Bank One argues that Safeco cannot maintain such a claim, since it has failed to tender the bond premium and collateral reserve payments to Bank One and/or the Guardian Entities, and has not offered to restore Bank One and/or the Guardian Entities to the *status quo ante*.  Instead, apparently with CMC's consent, Safeco transferred the collateral reserve payments to its claims unit, and used those funds to pay bond claims made by other investors.  Under such circumstances, Bank One contends, Safeco's rescission claim must be dismissed.


## II.    DISCUSSION

Bank One's motion for partial summary judgment with respect to Safeco's rescission counterclaim is based upon the relevant provisions of Ohio law, asserted by Bank One to be applicable to the rescission claim.  Safeco disputes Bank One's invocation of Ohio law, and maintains that California law governs all aspects of its rescission claim.

As both parties apparently concede, Ohio law differs from California law with respect to the requirement of tender of consideration as a prerequisite to the maintenance of a rescission claim.  With certain exceptions, Ohio law does not permit a rescission claim unless a plaintiff has restored or offered to restore the consideration paid, prior to the filing of the action. *See Miller v. Bieghler*, 123 Ohio St. 227, at syllabus (1931).  Under California statutory law, however, service by Safeco of its counterclaim constitutes the requisite notice of rescission and offer to restore. *See* Cal. Civ. Code § 1691.[4]

---

[4] Bank One argues that, despite the inclusion of a Nevada choice of law provision in the SSAs, Nevada law does not apply here, since rescission is an equitable remedy that does not involve the construction of the SSAs.  Although for different reasons, Safeco also argues against the application of Nevada law to its rescission claim.  To the extent that the Court considers Nevada law to be applicable, however, Bank One asserts that Nevada law is consistent with Ohio law in requiring restoration of the consideration paid in order to effect rescission of a contract. *See, e.g., Stanley v. Limberys*, 74 Nev. 109 (1958); *Allenbach v. Ridenour*, 51 Nev. 437, 461 (1928).  Safeco apparently agrees, although it maintains that Nevada recognizes exceptions to this general rule.

Accordingly, the Court considers choice of law principles prior to determining the merits of Bank One's motion.  For the reasons set forth below, the Court finds that California law applies to consideration of Bank One's claim for rescission of the Safeco lease bonds.  With respect to Safeco's claim for rescission of the SSAs, the Court finds that the choice of law provision contained in those documents controls, and Nevada law applies to the claim for rescission of the SSAs.

### A.      Choice of Law

In deciding conflict of law questions in diversity of citizenship cases, a federal court generally follows the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  The Court thus applies Ohio choice of law rules in determining the substantive law applicable to Bank One's motion.

With respect to contract claims, Ohio has adopted §§ 187-188 of the Restatement (2d) of Conflict of Laws. *See National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 149 (6th Cir. 1992); *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St. 3d 436, 438 (1983). Section 187 of the Restatement contains provisions applicable to agreements in which the parties have chosen the law governing their contractual rights and duties.  Section 188 applies in the absence of such an effective choice by the parties. *See Ohayon v. Safeco Ins. Co.*, 91 Ohio St. 3d 474, 476-77 (2001).

"Ohio choice of law rules mandate that the law of the state with the more significant relationship to the contract should govern disputes arising from it. . . ." *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992).  To determine which state's relationship to the contract is most significant, in the absence of an effective choice of law by the parties, Ohio

courts apply the factors set forth in § 188 of the Restatement (2d) Conflict of Laws:

> (2)      In the absence of an effective choice of law by the parties, . . . the contacts to be taken into account in applying the principles of  § 6 to determine the law applicable to an issue include:
>
>> (a)      the place of contracting,
>>
>> (b)      the place of negotiations of the contract,
>>
>> (c)      the place of performance,
>>
>> (d)      the location of the subject matter of the contract, and
>>
>> (e)      the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (2D) CONFLICT OF LAWS, § 188(2).  As referenced within section 188, the contacts set forth in section 188 are to be considered in tandem with the factors set forth under section 6 of the Restatement:

> (a)      the needs of the interstate and international systems,
>
> (b)      the relevant policies of the forum,
>
> (c)      the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d)      the protection of justified expectations,
>
> (e)      the basic policies underlying the particular field of law,
>
> (f)      certainty, predictability and uniformity of result, and
>
> (g)      ease in the determination and application of law to be applied. . . .

RESTATEMENT (2D) CONFLICT OF LAWS, § 6(2).

The parties agree that the Safeco bonds contain no choice of law provision.  The SSAs contain a choice of law provision dictating the application of Nevada law.  Safeco's Third Counterclaim seeks rescission of both the bonds and SSAs.

This court previously held, in its Lead Opinion re: Motion for Judgment on the Pleadings (Doc. 1708) that California law governs contractual claims in these actions, with the exception of disputes involving construction of the SSAs, or of other documents containing explicit choice of law provisions.[5]  Unsurprisingly, the parties hold differing views as to whether that ruling has any application to the issues presented in this motion, and also disagree as to the proper outcome of an analysis of the factors contained in Restatement §§ 188 and 6.

Bank One argues that the choice of law determination contained in the Court's Lead Opinion should be interpreted as limited to the narrow questions addressed in that opinion— specifically, to issues relating to construction of the Safeco bonds.  Bank One contends that, since rescission is an equitable remedy, this issue is not governed by a strict contractual analysis, and the Court's ruling regarding the law applicable to contractual claims does not apply to Safeco's rescission claim.[6]  With respect to that claim, Bank One asserts that Ohio law properly applies.  "The courts have long recognized that they are not bound to decide all issues under the local law of a single state. . . .  Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states. . . ." RESTATEMENT (2D) CONFLICT OF LAWS, § 188, Comment to Subsection (1).

Bank One notes the provisions of § 194 of the Restatement, which explicitly governs

---

[5] The Court subsequently clarified, in a separate opinion, that its choice of law ruling in the Lead Opinion applied only to the contractual issues raised in the Motions for Judgment on the Pleadings, and did not govern the separate tort claims asserted by some parties to these actions. *See* Doc. 1865, at 64.

[6] Alternatively, Bank One requests that the Court reconsider its prior choice of law determination.

choice of law disputes with respect to contracts of suretyship.  That section provides:

> The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (2D) CONFLICT OF LAWS, § 194.  In most cases involving choice of law questions relating to surety bonds, § 194 likely would resolve the issue in a straightforward manner.  As Bank One acknowledges, however, the parties here have a fundamental dispute regarding the identity of the principal obligation(s) that the Safeco bonds were intended to secure.  While Safeco asserts that its bonds guarantee only lease payments to CMC, the Banks argue that those bonds in fact guarantee the payment stream to the Banks (nominally the assignees of the Guardian Entities' transactional rights)—effectively incorporating the rights and duties set forth in both the leases and SSAs.

As previously noted, the SSAs contain a Nevada choice of law provision.  The leases, on the other hand, contain a floating choice of law provision, which designates the state, "as the same may change from time to time, where the holder of the Lessor's interest in this Lease maintains its principal office responsible for administering this Lease. . . ." Doc. 46, Exhs. 14-15, at ¶ 18.  Bank One asserts that, since Bank One is the current holder of the Lessor's interest, this provision requires the application of Ohio law to the leases.  Given that Bank One reads the bonds as guaranteeing both the SSAs and the leases, applying Bank One's analysis under the provisions of section 194 of the Restatement produces an inconclusive result.

Bank One thus turns to the general provisions of section 188 and argues that, with respect to Safeco's rescission claim, the most important factors to be considered are the place of

performance, the place of contracting, and the location of the subject matter of the contract. Bank One asserts that the relevant state with respect to each of these factors is Ohio.

Bank One states that the closing of each transaction occurred in Ohio, when all documents were fully executed and loan funds were released to the Guardian Entities. Moreover, the bonds and SSAs contemplate that payments were to be made to several Ohio bank accounts located at Bank One, as designated by the relevant Guardian Entity.  Further, the SSAs provide for assignment of all rights to the Guardian Entities, located in Ohio.  The bonds contain language indicating that Safeco is "duly authorized to transact business in the State of Ohio as Surety. . . ." (Doc. 46, Exhs. 1-2).  According to Bank One, all of these factors indicate that Ohio is the place of performance of the lease bond contracts.

Bank One argues, further, that the place of contracting was Ohio, since the leases were dated to coincide with the Ohio closings on the Guardian transactions, and the SSAs also were fully executed during the closings.  The SSAs provide that, as of the closings, Safeco was required to take possession of the original lease files and bonds from CMC.  Bank One asserts, moreover, that A&M, on behalf of Safeco, engaged in communications with Bank One's Ohio counsel during the process of negotiating the Safeco bonds. Again, Bank One maintains that the provisions of the documents, as well as the facts relating to the process of negotiation of those documents, compel a finding that the place of contracting was Ohio, not California.

Bank One also relies on the Reporter's Note to section 194 of the Restatement, which indicates that, "[i]n the majority of cases . . . the law governing the suretyship contract is the local law of the state where the creditor acted upon the guaranty by extending credit. . . ." RESTATEMENT (2D) CONFLICT OF LAWS, § 194, Reporter's Note.  Bank One thus encourages the Court to recognize Ohio's significant role as the state in which Bank One extended credit to the

Guardian Entities, and thus the state with a significant policy interest in protecting the justifiable expectations of creditors.  Despite the existence of the choice of law provision in the SSAs, Bank One argues that the Court should consider the SSAs as "integrated" into the bonds and apply Ohio law to the entire transaction.

In its memorandum in opposition, Safeco argues that California law governs Safeco's counterclaim for rescission.  In support of this contention, Safeco relies on the doctrine of law of the case, and contends that the Court should adhere to its prior determination that California law governs the disposition of contractual claims in these actions.  Under the doctrine of law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. . . ." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Although a court has power to revisit its prior decisions, "as a rule courts should be loath[] to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice. . . .'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)(internal quotation omitted).  In this regard, Safeco asserts that the facts and legal principles asserted by Bank One in connection with this motion are virtually identical to those raised in connection with the motion for judgment on the pleadings, and thus that there is no justification for the Court to revisit its choice of law determination here.

Safeco also argues that, in connection with the factors set forth in section 188 of the Restatement, all of the relevant facts in this case weigh in favor of the application of California law.  Safeco disputes the assertion that it (or A&M on its behalf) engaged in any negotiations with Ohio counsel in connection with the process of negotiating the bonds.  In support of its argument in favor of the application of California law, Safeco relies on the following facts:

(1)    CMC's operations, including CMC's equipment leasing program, were centered in Escondido, California;

(2)    Most of CMC's employees and senior management were located in California and most of the leases were executed from the California office;

(3)    CMC's communications with Safeco originated from its California office, and Safeco personnel conducted meetings with CMC and A&M in California in order to investigate the CMC lease bond program;

(4)    All lease servicing was performed in Escondido, and all lease payments were received in, and/or made from, that office;

(5)    CMC maintained numerous bank accounts in California to facilitate its servicing of the leases;

(6)    Michael Anthony and his brokerage firm, Anthony & Morgan, are residents of California;

(7)    Safeco's California office was responsible for underwriting the bonds, and a Safeco employee physically reviewed leases proposed for bonding in California; and

(8)    The bonds were printed and executed by A&M and delivered to CMC in California.

Safeco also addresses Bank One's reference to § 194 of the Restatement, which provides that the rights and obligations of parties under a surety contract are determined by the law governing the principal obligation.  As it has maintained throughout these proceedings, Safeco contends that the principal obligation guaranteed by each surety bond was an underlying lease. As noted by Bank One, each lease contained a floating choice of law provision, tied to the

location "where the holder of the Lessor's interest in this Lease maintains its principal office responsible for administering this Lease. . . ." (Doc. 46, Exhs. 14-15, at ¶ 18).  Safeco contends that analysis pursuant to § 194 also supports the application of California law since CSC, a subsidiary of CMC, serviced and administered all leases from its office in Escondido, California.

Safeco devotes a portion of its opposition brief to analysis of the Nevada choice of law provision contained in the SSAs, and argues that the choice of law provision should not be applied, since the SSAs are not incorporated into the bonds and, in any event, Nevada has no substantial relationship to the transaction.  Safeco notes that there is no express reference to the SSAs in the bonds and no evidence that the parties intended the documents to be read together. Despite Safeco's contention that the SSAs were not incorporated into the bonds, Safeco nonetheless argues that the choice of law provision in the SSAs should be disregarded, since Nevada has no substantial relationship to the parties and/or the transaction.

With respect to its assertion that Nevada lacks a substantial relationship to the transaction, Safeco relies on the rule articulated in *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St. 3d 436, at syllabus (1983), which relied on Restatement § 187(2) in upholding the parties' negotiated choice of law provision:

> [T]he law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties. . . .

*Id.*  Here, Safeco asserts that, other than the Nevada location of CMC's headquarters, Nevada has no relationship to these transactions, and there is no justification for giving effect to the Nevada

choice of law provision.  Safeco thus argues that the Court should ignore the choice of law provision contained in the SSA and apply the factors set forth under § 188 of the Restatement.  As set forth above, Safeco contends that a proper balancing of these factors results in the application of California law.

In its reply memorandum of law, Bank One reiterates its position that the choice of law issue, with respect to Safeco's rescission claim, is a question of first impression for this Court— again, based on its assertion that the Court's prior ruling specifically addressed only issues of contract construction.  Bank One argues that Safeco's focus on the conduct of CMC, and the location of Safeco's underwriting office, is too narrow and ignores the significance of the loan transactions between Bank One and the Guardian Entities.  Bank One argues that, as demonstrated by the document references to the state of Ohio, Safeco knew at the time the bonds were issued that the Guardian Entities and Bank One were the ultimate obligees in the transaction.  Bank One points out that rescission of a contract may only occur *in toto*, *see, e.g., Trebilcock v. Elinsky*, 2007 U.S. Dist. LEXIS 6167, *15-16 (N.D. Ohio Jan. 26, 2007), *citing Ryley v. Langenbach*, 3 Ohio L. Abs. 475, *2 (8th Dist. 1925), and thus asserts that Safeco cannot seek rescission of the bonds separate and apart from the obligations undertaken in connection with the Guardian Entity transactions.

Bank One also disputes Safeco's assertion that all of its conduct in connection with the CMC program occurred in California.  Bank One notes, for example, that Safeco employees traveled to Florida in late 1999 to conduct due diligence with respect to the Shandoro/MedQuik leases.  In any event, Bank One argues that the transactions at issue were entered into and performed in Ohio, and that Ohio has the strongest interest in protecting the legitimate expectations of local investors and lenders.

The Court has carefully considered the arguments of both parties and has determined that the Court's analysis as to the applicable law differs with respect to Safeco's request for rescission of the lease bonds, and its request for rescission of the SSAs.  While the Court makes no finding as to the parties' arguments relating to whether the bonds and SSAs should be viewed as part of an entire, integrated transaction (rather than a series of separate transactions and assignments), the Court finds no reason to conclude here that the choice of law provision of the SSAs was incorporated into the bonds.  With respect to the provisions of the SSAs, moreover, the Court cannot find that Nevada, the jurisdiction selected by the choice of law provision contained in the SSAs, is so unrelated to the parties and the transaction that the provision should be disregarded with respect to the claim for rescission of the SSAs.

There is no express reference to integration in either the bonds or SSAs.  Rather, the SSAs contain only a vague reference to "Related Documents."  Although the bonds unequivocally fall within the purview of that provision, the lease bond transactions involved numerous separate documents that would meet that definition, including the Credit and Security Agreements and the underlying leases.  Several of such "Related Documents" contained their own separate choice-of-law clauses.  For instance, the Credit and Security Agreements, executed between the Guardian Entities and various Ohio Banks, contained a choice of law clause selecting the application of Ohio law.  The leases, as explained above, contained a floating choice of law provision.  It is clear, therefore, that the mere reference in the SSAs to "Related Documents" does not indicate that the parties intended all such documents to be construed together for purposes of choice of law analysis.

Given the existence of multiple negotiated documents containing separate choice of law provisions, there is no basis for concluding that the parties intended or expected all issues

14

involving validity and construction of the transaction documents to be governed by a single state's law.  Accordingly, the Court separately analyzes the choice of law rules applicable to Safeco's claims for rescission of the lease bonds and of the SSAs.  Upon careful consideration of these documents and the parties' positions, the Court concludes that (1) Safeco's counterclaim for rescission of the Safeco bonds is governed by California law; and (2) Safeco's counterclaim for rescission of the SSAs is governed by Nevada law.

In examining the parties' contentions, the Court has reviewed the allegations set forth in Safeco's rescission counterclaim (Doc. 37, at 27) and the facts upon which the counterclaim is based.  In addition to allegations of fraud against CMC, Safeco has raised allegations of nondisclosure against both the Guardian Entities and Bank One, relating to (1) the Guardian Entities' failure to disclose an anonymous letter received by them in February 2001, alleging that CMC, A&M and others were engaged in a Ponzi scheme; and (2) Bank One's failure to disclose its knowledge of articles published in *The Plain Dealer*, a Cleveland newspaper, describing financial problems, prior bankruptcies and tax issues on the part of Blaine Tanner, the principal of the Guardian Entities.

The Court finds, first, that despite Bank One's vigorous assertions to the contrary, Safeco's counterclaim for rescission of the Safeco bonds is subject to the same contractual choice of law analysis as that previously conducted by the Court in its opinion on the motions for judgment on the pleadings. (Doc. 1708).  While Bank One asserts that its characterization of rescission as an "equitable claim" compels a different analysis, neither party has cited any case law relating to the issue of whether a claim seeking the equitable remedy of rescission is subject to the same choice of law analysis as would govern a general contract claim.  Apparently, this failure results from a dearth of case law addressing this issue in the relevant jurisdictions.

15

The Court has conducted broad independent research on this question, however, and finds that, where the parties to a contract have failed to specify the governing law, courts generally have applied a contractual choice of law analysis in determining the law applicable to a party's claim for rescission. *See, e.g., Raymark Industries, Inc. v. Stemple*, 714 F. Supp. 460, 466 (D. Kan. 1988)(in absence of contractual choice of law, applying Kansas's *lex loci contractus* rule to claim for rescission); *Atcco Mortg., Inc. v. Morley (In re Morley)*, 292 B.R. 446, 453 (Bankr. D.N.H. 2003)(applying § 188 of Restatement to find Virginia law applicable to rescission claim) *Old Republic Ins. Co. v. Rexene Corp.*, 1990 Del. Ch. LEXIS 187, *13-14 (Del. Ch. Nov. 5, 1990)(unpublished disposition)(holding that § 188 of the Restatement governed determination of choice of law applicable to rescission claim).  As previously explained, application of Ohio's general contractual choice of law rules to the rescission claim here would require application of section 188 of the Restatement of Conflicts of Laws.

Moreover, as noted by Safeco, section 201 of the Restatement provides that "the effect of misrepresentation, duress, undue influence and mistake upon a contract is determined by the law selected by application of the rules of §§ 187-188. . . ." RESTATEMENT (2D) CONFLICT OF LAWS, § 201.  Since Safeco's claims for rescission are based on alleged misrepresentations and/or nondisclosures by CMC, Bank One and/or the Guardian Entities, it appears that application of the § 188 principles to determine choice of law is compelled by this section of the Restatement as well.

Accordingly, the choice of law analysis conducted by the Court in its opinion on the motions for judgment on the pleadings, in relation to the Banks' contractual claims on the surety bonds, is equally applicable to the issues presented by Safeco's counterclaim for rescission of the bonds.  Pursuant to law of the case principles, the Court will adhere to its prior choice of law

determination unless compelling reasons are presented for disregarding that determination.  In the Court's view, Bank One has presented no such compelling reason.

The issues and allegations raised by Safeco's rescission counterclaim are substantially similar to those considered by the Court in its determination of the motions for judgment on the pleadings.  As such, the factors and policy considerations cited by the Court in its prior choice of law determination govern the Court's consideration of Safeco's counterclaim here.  In rendering its prior choice of law determination, the Court was presented with the Banks' attempts to enforce the terms of the bonds, as well as the Sureties' attempts to rescind those bonds on various grounds.  The Court applied the choice-of-law rules of various jurisdictions, including California, Nevada, and Ohio, and focused on the facts alleged in order to determine which state bore the "most significant relationship" to the transaction and the parties.

In finding that California law applied to the Ohio Banks' contractual claims, the Court relied primarily on the factors cited by the Sureties, including CMC's California center of operations, the California servicing of the leases, CMC's communication with all parties from its California office, and the execution and issuance of the lease bonds from a California location. In its Lead Opinion (Doc. 1708), the Court gave due consideration to the Ohio connections cited by the Banks—including some Ohio negotiations, as well as the Ohio closings on the transactions.  The Court noted, however, that the Banks were not named as obligees in the lease bonds, nor were they parties to the SSAs.  The Banks, rather, received their rights by virtue of (1) execution of assignment documents, and (2) creation of security interests through the Credit and Security Agreements.[7]

---

[7] The Court's consideration of the structure of the transactions for choice of law purposes has no bearing on the Court's ultimate determination, after full presentation at trial, as to which party was intended to be the "obligee" in the transactions.  The Court expresses no opinion here in that regard.

The bonds that Safeco seeks to rescind were issued, executed and paid for within the state of California.  Throughout the period that CMC remained in operation, payments were made to, and forwarded to investors from, the California offices of CSC.  To the extent that counsel for the Guardian Entities conducted negotiations with Safeco or its agents regarding the terms of the bonds (a fact that is disputed by the parties), such negotiations would have occurred by telephone between Ohio and California.  The "hub" of the CMC lease bond program, clearly, was centered in California, and the Guardian Entities (borrowers and assignors of Bank One) had extensive dealings with CMC and its affiliates, including A&M.  It is not unreasonable to conclude, therefore, that the Guardian Entities could reasonably have assumed that California law would govern the transaction.  Based on the form of the transaction, and Bank One's failure to negotiate any contrary provision in the transaction documents in which it received an interest, Bank One also might have anticipated that the lease bonds would be subject to the law of the jurisdiction in which they were issued.  Accordingly, the Court adheres to its prior determination, and finds that California law should be applied in evaluating the merits of Safeco's counterclaim for rescission of the Safeco bonds.

To the extent, however, that Safeco's counterclaim seeks rescission of the SSAs, that claim stands on a different footing.  The SSA contains a choice of law provision, which states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada without regard to the principles of conflicts of laws thereof and the obligations, rights and remedies of the parties under this Agreement shall be determined in accordance with such laws. . . .

Doc. 46, Exh. 5-2, at 42.  Previously, in the Court's Lead Opinion (Doc. 1708, at 15), the Court indicated its view that the choice of law provision contained in the SSAs was applicable to questions and issues involving the SSAs and/or their terms.

18

Due to the existence of this provision, the choice of law analysis with respect to the SSA is governed not by section 188 of the Restatement, but by section 187. *See Schulke*, 6 Ohio St. 3d at 438.  That section provides:

(1)     The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2)     The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a)     the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b)     application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3)     In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

RESTATEMENT (2D) CONFLICT OF LAWS, § 187.

In the parties' briefing, neither party argues for the application of the choice of law provision to Safeco's claims for rescission of the SSAs.  Bank One apparently asserts that the provision should be disregarded due to (1) the "integrated" nature of the transaction; (2) Bank One's contention that rescission is an equitable remedy and thus warrants a separate choice of law analysis; and (3) Bank One's contention that Ohio law applies to other aspects of the transaction.  Safeco, on the other hand, argues that the Court should ignore the choice of law

provision since Nevada had no substantial relationship to the parties or to the transaction, with the exception that CMC's headquarters were located in Nevada.

The Court declines to hold, however, that the choice of law provision, drafted unambiguously and embodied within a document resulting from extensive negotiation, may be disregarded so lightly.  First, although the choice of law provision is a general one and does not specify its application to issues of validity (e.g., Safeco's rescission claim here), Ohio courts generally have applied such general choice of law provisions to questions of this nature. *See, e.g, General Envtl. Science Corp. v. Horsfall*, 753 F. Supp. 664, 675 (N.D. Ohio 1990)(upholding choice of law clause and holding that Swiss law would govern questions of contract validity); *Beta Lasermike, Inc. v. Swinchatt*, 2000 Ohio App. LEXIS 887, *7-9 (2d Dist. Mar. 10, 2000)(unpublished disposition)(applying Massachusetts choice of law provision to consider validity of noncompete agreement); *In re Estate of Davis*, 1999 Ohio App. LEXIS 5751, *7-8 (11th Dist. Dec. 3, 1999)(unpublished disposition)(applying Texas choice of law provision to consider validity of antenuptial agreement). *See also* RESTATEMENT (2D) CONFLICT OF LAWS, § 201 (providing that rule of § 187 governs impact of misrepresentation upon a contract containing a negotiated choice of law provision).

Second, despite Safeco's assertions, the Court cannot find that the relationship of the state of Nevada to the parties and to the transaction is so insubstantial as to warrant disregard of the choice of law provision.  Pursuant to section 187 of the Restatement, there is a presumption in favor of upholding the parties' contractual choice, which may be overruled only where "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or . . . application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen

20

state. . . ." RESTATEMENT (2D) CONFLICT OF LAWS, § 187(2)(a)-(b).

Although neither of the current parties to this action claims any present relationship with the state of Nevada, it is undisputed that, at the time the SSAs were executed, CMC was a party to those documents.  A major function of the SSAs, in fact, was to define the obligations of CMC and its affiliate, CSC, relating to sale of the lease bonds, servicing of the underlying leases, and forwarding of payments to investors.  At the time the SSAs were executed, therefore, all parties contemplated that, while other parties to the SSAs might transfer or assign their interests, CMC and/or its affiliates would remain parties to the SSAs and would remain bound by the provisions of those documents.

As all parties recognize, CMC was headquartered in Nevada, and had some familiarity with the impact of that state's laws on its lease bond program.  CMC was a "repeat player" in these transactions and, apparently, had executed previous SSAs designating the applicability of Nevada law.  All other parties to the SSA were engaged in business transactions with CMC.  At that time, those entities knew the location of CMC's headquarters and apparently did not object to the designation of that state's law to govern their agreement.  In the Court's view, the selection of Nevada law based on the participation of CMC, a Nevada corporation, is a "reasonable basis" for the parties' choice.  Under such circumstances, the Court finds that the choice of law provision included within the SSAs is valid and applies to Safeco's claim for rescission of the SSAs.

Accordingly, the Court finds that Safeco's claim for rescission of the SSAs is controlled by Nevada law.

**B.      Tender of Consideration as Prerequisite to Rescission Claim**

In light of the choice of law determinations set forth above, the Court now considers the merits of Bank One's summary judgment motion with respect to Count Three of Safeco's counterclaim.   For the reasons set forth herein, the Court finds that Bank One's summary judgment motion must be <u>denied</u> with respect to Safeco's claim for rescission, both with respect to the lease bonds and the SSAs.

Bank One concedes that, to the extent California law applies to Safeco's claims for rescission, Bank One's motion for summary judgment must be denied.  Cal. Civ. Code § 1691 provides:

> Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:
>
> (a)      Give notice of rescission to the party as to whom he rescinds; and
>
> (b)      Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.
>
> When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both.

Cal. Civ. Code § 1691.  Since the Court has found that Safeco's counterclaim for rescission of the lease bonds is governed by California law, Bank One's motion for summary judgment as to Safeco's claim for rescission of the bonds must be <u>denied</u>.

With respect to Safeco's claim for rescission of the SSAs (which, as the Court previously determined, is governed by Nevada law), the Court finds that Bank One's motion for summary

judgment must be denied as to that claim as well.  Although Nevada law requires a plaintiff seeking rescission to tender back any consideration received, that rule is not without exception. Given the fraud allegations underlying Safeco's counterclaim and the Court's inability to resolve such issues prior to trial, the Court cannot determine, in the context of this summary judgment motion, whether an exception applies here that would excuse Safeco from the requirements of tender and offer to restore.

Nevada law generally requires that "the plaintiff, seeking rescission, must restore the defendant to the position he occupied before the transaction in question. . . ." *Stanley v. Limberys*, 74 Nev. 109, 113 (1958). *See also Lyerla v. Watts*, 87 Nev. 58, 62 (1971)(same). Recent case law clarifies, however, that Nevada law recognizes an exception where the party seeking to be restored is guilty of fraud in the inducement. *See Graber v. Comstock Bank*, 111 Nev. 1421, 1429 (1995)(declining to require complete restoration of consideration by guarantor seeking rescission of agreement, where guarantor had demonstrated fraud in the inducement by lender bank); *see also Bergstrom v. Estate of DeVoe*, 109 Nev. 575, 578, n.1 (1993)(recognizing that the "general rule may not apply where the defendant is guilty of fraud. . . .").

Safeco's rescission counterclaim here alleges primarily fraud in the inducement against CMC.   A fair reading of Safeco's rescission counterclaim, however, indicates that Safeco also alleges, at least to some degree, certain material nondisclosures by Bank One and the Guardian Entities.  Bank One's summary judgment motion does not address the nondisclosure allegations.

Bank One argues strenuously that it is innocent of any fraud and that CMC's fraud cannot be imputed to it.   The Court previously found in the Lead Opinion, however, that the determination of whether CMC's fraud could be imputed to the Banks was dependent on a determination of the identity of the obligee in the CMC lease bond transactions. (Doc. 1708, at

33).  Even leaving aside the direct allegations of nondisclosure against the Guardian Entities and Bank One, the Court noted in the Lead Opinion that, in the event CMC is ultimately determined to be the obligee, the Banks will succeed to the interests of CMC and will be subject to defenses that might be asserted against CMC.  In that event, Bank One will "stand in CMC's shoes" and the fraud of CMC may, in effect, be imputed to Bank One.  In its Amended Revised Case Management Plan, issued September 12, 2006 (Doc. 1861), this Court noted its view that issues of fraud were not susceptible to determination in the context of dispositive motions.

Thus, while the parties' briefing reveals disputes as to the breadth of the fraud exception to the tender rule under Nevada law, the Court finds that it cannot make a determination as to whether this exception may apply prior to rendering a finding as to the "obligee" status of Bank One.  In the Court's view, a determination as to whether Safeco may be entitled to the remedy of rescission—undisputedly an equitable remedy—requires full examination of the equitable positions of the parties, including the question of whether any fraud may be proven against, or imputed to, Bank One.

Accordingly, Bank One's motion for summary judgment as to Safeco's claim for rescission of the SSAs is <u>denied</u>.


III.     **CONCLUSION**

For the reasons set forth herein, Bank One's motion for partial summary judgment as to Count Three of Safeco's Counterclaim (Doc. 46) is <u>denied</u> in its entirety.

**IT IS SO ORDERED.**

s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: April 2, 2009**

64756-1