## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY | : | Case No. 1:02CV16000 |
| CENTER, INC., EQUIPMENT | : | |
| LEASE LITIGATION | : | (MDL Docket No. 1490) |
| | : | |
| | : | JUDGE O'MALLEY |
| | : | |
| | : | MEMORANDUM OF OPINION |
| | : | AND ORDER |
| | : | |
| | : | This Order Relates to MDL Case |
| | : | No.  02CV16014 |

The dispute in these actions concerns the Sureties' liability on various surety bonds issued in connection with certain transactions between the Banks[1] or their intermediaries and Commercial Money Center, Inc. ("CMC").  CMC's business involved the leasing of equipment and vehicles to numerous lessees in exchange for lease payments.  CMC then pooled the leases and sold them to institutional investors.  The Banks either purchased interests in some of these lease pools or funded the purchase of the same by others.  When CMC's business failed, the Banks ceased receiving lease payments, and now claim millions of dollars in losses from these transactions.  The Banks have sued the Sureties, seeking to recover on the bonds associated with the transactions.  The Sureties assert CMC's fraud as a defense to the Banks' claims and seek to rescind the surety bond transactions based on fraud in the inducement.[2]

These actions were transferred to this Court by order of the Judicial Panel on Multidistrict

---

[1] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Court's Consolidated Rulings, issued August 19, 2005 (Docs. 1708, 1709), and in the Bench Trial Opinion, issued May 28, 2010 (Doc. 2459).

[2] The Court does not summarize here the entirety of the complicated factual scenario involved in these cases. Rather, the Court refers the reader to its two Consolidated Rulings on the numerous Motions for Judgment on the Pleadings, issued August 19, 2005 (02-16000, Docs. 1708, 1709), and to its Bench Trial Opinion, issued May 28, 2010 (Doc. 2459).

Litigation ("the MDL Panel"), issued on October 25, 2002. (02-16000, Doc. 1).  This Court has ordered that these actions be coordinated for pretrial purposes. (02-16000, Doc. 2).

Discovery now is complete in these actions, and the Court has determined all dispositive motions.  A few actions have been remanded to their transferor courts for trial, and those actions that remain pending before this Court are in the final stages of pretrial preparation.

On May 13, 2009, this Court conducted a conference with all counsel in the cases venued in the Northern District of Ohio, to discuss the parties' potential consent to a bench trial in these cases on the threshold issue of who the parties intended to be the obligee on the Lease Bonds (the "obligee issue").[3]  Certain parties agreed to have the Court conduct proceedings and determine the obligee issue, either because (1) they believed that the obligee issue was one properly addressed by the Court; or (2) they were willing to waive any jury right which might exist as to that issue so as to streamline the proceedings and minimize costs.[4]

With respect to those cases in which all parties did not consent to Court determination of the obligee issue, the Court established a schedule for parties to submit briefs regarding the proper arbiter of this question—i.e., whether the obligee issue is one for a jury or for the Court. (Doc. 2227).  Pursuant to the Court's Order, briefs were submitted in this case by Bank One (Doc. 54) and by Safeco (Doc. 56).

Thus, this action currently is before the Court for consideration and resolution of the parties' arguments regarding the proper procedure for determining the obligee issue in the action

---

[3] Generally speaking, the Sureties in the Ohio-venued actions, including Safeco, have argued that CMC, which is named as obligee in each of the Lease Bond documents, was in fact the party intended as obligee in these transactions.  The Banks, including Bank One, have argued that the intended obligee in each transaction was one of a number of "Guardian Entities" acting as intermediaries between CMC and the investor Banks—in this case, Guardian Capital II, LLC or Guardian Capital III, LLC.

[4] Based upon the consent of certain parties to the Court's determination of the obligee issue, this Court conducted bench trial proceedings in nine cases on July 13-16, 2009, and September 10, 2009.  The Court issued a Bench Trial Opinion (Doc. 2459) in those cases.

between Bank One and Safeco.  For the reasons set forth herein, the Court finds that the "obligee issue" is a purely equitable one subject to resolution by the Court.  Accordingly, the Court will schedule a bench trial in this case to determine the issue of obligee status in the transactions involving Bank One and Safeco.

## I.    Parties' Arguments

### A.    Bank One

Despite the Court's Order requesting briefing on a narrow procedural issue, Bank One has submitted a 38-page brief (Doc. 54), which contains detailed argument on the merits as to nearly every aspect of Bank One's case.[5]  In fact, Bank One's brief contains very little discussion regarding the proper <u>vehicle</u> for determination of the obligee issue in this case.  The Court has attempted, however, to distill the essence of Bank One's argument from the mass of material filed.

Bank One argues, essentially, that all issues in this case must be tried to a jury, since any other course of action would deprive Bank One of its constitutional right to a trial by jury on the legal issues presented.  Bank One cites *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)("[s]ince the right to jury trial is a constitutional one . . . [a trial court's] discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial. . . .")(internal quotations omitted), for this broad proposition.  The proper procedure, according to Bank One, is for the parties to try all legal claims and issues to a jury before the Court hears and determines *any* equitable claims, *citing Frahm v. Briggs*, 12 Cal. App. 3d 441, 445 (Cal. App. 2d Dist. 1970)(party entitled to trial by jury on legal issue); and *Ripling v. Superior Court of Los Angeles*

---

[5] Bank One, in what is akin to a summary judgment motion, has referenced 79 separate exhibits in its briefing.

*County*, 112 Cal. App. 2d 399, 408 (Cal. App. 2d Dist. 1952)("the mere existence of a remedy in equity cannot operate to defeat a right to proceed at law.  It is only where the issues to be tried are exclusively equitable in nature that a suitor is deprived of the right to a jury trial. . . ."). According to Bank One, where mixed legal and equitable claims are present, "the first factfinder binds the second on factual issues actually litigated and necessary to the result. . . ." *Troy v. Bay State Computer Group*, 141 F.3d 378, 383 (1st Cir. 1998).

Bank One's brief identifies numerous issues in this case which, according to Bank One, involve disputed factual questions properly subject to jury resolution.  Bank One contends, first, that the "obligee issue" itself involves factual issues that the Court must allow the jury to decide. Second, Bank One asserts that, because evidence relating to the obligee issue is relevant to other legal issues in this case, the Court should allow all matters to be presented to the jury.  These additional issues, according to Bank One, include: (1) the parties' intent to effect a novation; (2) fraud claims and the alleged Safeco waiver of fraud defenses; (3) estoppel against Safeco based on its issuance to Bank One of so-called "comfort letters"; and (4) the reasonableness of Safeco's reliance on representations by CMC.

With respect to the obligee issue, Bank One argues that it need not demonstrate the necessity for reformation of the Safeco bonds in order to establish its right to payment.  While Bank One appears to concede that reformation is always a question for the Court to decide, Bank One asserts that the obligee issue should be determined as a matter of contractual interpretation by consideration of "the SSAs and related SSA transaction documents together with extrinsic evidence on: the development of the CMC/Safeco Program by its principal architects . . .; the purpose of and the role of Safeco's bonds; industry custom and practice, market expectations and practices; Safeco's underwriting; representations made . . . to actual and potential investors; and

4

Safeco's initial response to bond claims. . . ." Bank One brief, Doc. 54, at 1-2.  Bank One argues, essentially, that the Lease Bonds are ambiguous, and that those ambiguities can be resolved without resort to principles of reformation.

In this regard, Bank One contends, the Court must examine extrinsic evidence as to the disputed interpretations of the SSAs and other transaction documents and determine whether any ambiguities exist.  If those documents are ambiguous, as Bank One asserts that they are, then the extrinsic evidence must be admitted and the disputed issues of fact regarding the parties' agreement must be submitted to the jury for determination. *See, e.g., Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (Cal. App. 2d Dist. 2004); *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1st Dist. 1998).

With respect to other issues in this case allegedly presenting issues appropriate for jury determination, Bank One argues as follows, relying in its brief on California case law:

(1)     Bank One asserts that its bad faith claim involves fact issues properly subject to jury determination. *See, e.g., Hicks v. E. T. Legg & Associates*, 89 Cal. App. 4th 496, 509 (Cal. App. 4th Dist. 2001)("[t]he issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact unless only one inference can be drawn from the evidence. . . .")(internal quotation omitted). *See* Bank One brief, Doc. 54, at 16.

(2)     Bank One contends that its novation claim is subject to jury determination because it contends that the evidence as to the parties' intent to effect a novation is in conflict. *See, e.g., Howard v. County of Amador*, 220 Cal. App. 3d 962, 980 (Cal. App. 3d Dist. 1990)("[w]here there is conflicting evidence the question whether the parties to an agreement entered into a modification or a novation is a question of fact. . . ."). *See* Bank One brief, Doc. 54, at 29-30.

5

(3)     Bank One argues that the scope of the alleged "fraud waiver" language contained in the Safeco bonds is a question of fact appropriate for jury determination. *See, e.g., Regus v. Gladstone Holmes, Inc.*, 207 Cal. App. 2d 872, 877-78 (Cal. App. 2d Dist. 1962)("[w]hether the fraud was waived or not is commonly a question of fact for the jury. . . ."). *See* Bank One brief, Doc. 54, at 32.

(4)     Bank One further asserts that an issue for jury determination exists as to whether Safeco is estopped from asserting its right to rescind based on Safeco's issuance of certain "comfort letters" to Bank One in connection with the lease bond transactions.  *See, e.g., Albers v. County of Los Angeles*, 62 Cal. 2d 250, 266 (1965)("[t]he rule is well established that the existence of an estoppel is generally a question of fact for the trier of fact. . . ."); *Feduniak v. California Coastal Com.*, 148 Cal. App. 4th 1346, 1360 (Cal. App. 6th Dist. 2007)("[t]he existence of an estoppel is generally a factual question"). *See* Bank One brief, Doc. 54, at 35.

(5)     Finally, Bank One contends that issues subject to jury determination remain with respect to the issue of the reasonableness of Safeco's reliance on representations by CMC, as well as the promptness of actions taken by Safeco to rescind upon its discovery of the falsity of CMC's representations. *See, e.g., Hil-Mac Corp. v. Mendo Wood Products, Inc.*, 235 Cal. App. 2d 526, 529-30 (Cal. App. 1st Dist. 1965)(determination as to whether party seeking to rescind has acted promptly "depends upon the particular facts of each case . . .", and "[t]he question is one of fact. . . ."). *See* Bank One brief, Doc. 54, at 36.

**B.      Safeco**

Safeco disputes Bank One's contention that *Beacon*, 359 U.S. 500 (1959), requires the Court to conduct a jury trial prior to the Court's determination of equitable issues in this case. While Safeco acknowledges that such an approach is appropriate in a case where legal and

6

equitable issues are inextricably intertwined, Safeco asserts that no such intermingling of issues exists in this case and argues that, where "there are no issues which are common to both the equitable and legal claims . . .", Bank One is not entitled to a jury trial on an equitable issue, *citing Giant Eagle v. Federal Ins. Co.*, 884 F. Supp. 979, 985 (W.D. Pa. 1995).

As Safeco points out, the court in *Giant Eagle* considered whether a party was entitled to a jury trial on its claim for reformation of a written contract, and found that "reformation is purely an equitable issue and must be decided by the court rather than by a jury. . . ." *Id.* at 985. Since no issues existed that were common to both the legal and equitable claims, the Court held, no jury trial right existed as to the reformation claim. *See id.* at 985.

Similarly, here, Safeco asserts that the obligee issue is distinct from the other legal claims involved in this action.  According to Safeco, whether or not the Court agrees with Bank One's assertions of "original obligee" status on the Lease Bonds, Bank One may still pursue all of its legal claims—including its claims for breach of contract and bad faith—at a later stage of the case.

Further, Safeco argues, in the event Bank One prevails on the obligee issue, the issues to be presented to a jury in this action will be significantly streamlined, since Safeco will be precluded from asserting its defense of fraud in the inducement.  On the other hand, Safeco notes, if all of the issues in this action are tried together in the context of a jury trial, both parties will be put to the effort and expense of litigating Safeco's fraud in the inducement defense, prior to obtaining a ruling as to whether that defense is even relevant to these proceedings.  Given these circumstances, Safeco argues, Bank One's suggested approach is manifestly inefficient and impractical.

According to Safeco, the analysis to be conducted relating to the obligee issue unquestionably involves questions of reformation, not contractual interpretation.  Safeco points out that, under California law, parol evidence may not be admitted with respect to the parties' contractual intent unless the Court *first* determines that an ambiguity exists in the contract.  *See, e.g., Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (Cal. App. 2d Dist. 2004).  Moreover, Safeco asserts, whether a contract is ambiguous must be determined by the Court as a matter of law, *see City of Chino v. Jackson*, 97 Cal. App. 4th 377, 383 (Cal. App. 4th Dist. 2002).  "It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. . . ." *Id.* at 382-83.  Safeco further argues that California law precludes the use of extrinsic evidence to prove a meaning to which the language of the document is not "reasonably susceptible." *See Tahoe Nat'l Bank v. Phillips*, 4 Cal. 3d 11, 17 (1971).

Safeco contends that Bank One is asking the Court not to reform the lease bond, but to "reinterpret" it—i.e., to give it a meaning to which it is not reasonably susceptible.  Such an argument, Safeco asserts, cannot properly be asserted in the context of contractual interpretation.  Rather, a reformation analysis is necessary, and Bank One has no jury trial right in that context.

With respect to Bank One's novation argument, Safeco argues that this issue may be determined by the Court as a matter of law without consideration of extrinsic evidence.  According to Safeco, Bank One seeks to introduce only documentary evidence supporting this argument, and has proffered no testimony as to the parties' intent.  Given the absence of any testimonial evidence, Safeco asserts, there is also no conflict in the evidence, and the Court may determine as a matter of law whether the parties intended to effect a novation. *See Howard v. County of Amador*, 220 Cal. App. 3d 962, 978 (Cal. App. 3d Dist. 1990)(interpreting contractual

8

amendment as a matter of law to find that no novation occurred).  Thus, Safeco asserts, no jury trial is required on this issue either.


II.      **Discussion**

The essence of Bank One's argument is that (1) the required analysis with respect to the transaction documents in this case is one of contractual interpretation, not reformation; (2) because the transaction documents are ambiguous, Bank One is entitled to a jury trial as to the proper interpretation of the transaction documents; and (3) the evidence relating to either interpretation or reformation of the transaction documents is inextricably linked to the evidence relating to myriad other legal issues in this case, making it necessary to consider all issues in one proceeding before a jury first.  The Court is compelled to reject Bank One's argument.

First, the obligee issue clearly requires a reformation analysis, as to which no jury trial right exists.  The Court further finds, moreover, that the questions involved in the obligee issue are distinct from other legal issues in this case.  Accordingly, Bank One's jury trial right under the Seventh Amendment is not implicated by this Court's determination of the equitable issue of reformation.

A.      **The Obligee Issue is a Reformation Issue.**

This Court first considered the obligee issue in its Lead Opinion on the Motions for Judgment on the Pleadings ("Lead Opinion")(Doc. 1708), issued August 19, 2005.  That opinion issued in response to the Banks' steadfast assertion that the Court should interpret the transaction documents as a matter of law and conclude, without resort to any extrinsic evidence, that it was the Banks, not CMC, who should be deemed the obligee on the Lease Bonds.[6]  The Court

---

[6] The Ohio Banks (including Bank One) have since backed off of their original claim to direct obligee status. Since the Ohio Banks generally obtained their rights by way of assignment or purchase from intermediaries, it is

examined the language of the various transaction documents executed by the parties, including the lease bonds and SSAs, as well as the indemnity agreements executed by CMC and its principals.  The Court agreed with the Banks that the existence of indemnity agreements executed by CMC in favor of at least certain of the Sureties provided some support for the Banks' argument that CMC was intended to be a lease bond principal, rather than the obligee. Since the Lease Bonds *expressly* and unambiguously named CMC as obligee, however, the Court found that the indemnity agreements alone were insufficient to support a finding contrary to the plain language of the Lease Bonds.  Rather, the Court found, the Banks could override the designation of CMC as obligee only through reformation of the Lease Bonds, and by demonstrating that the Lease Bonds did not reflect the parties' actual intent to designate another party (the Banks or their intermediaries) as obligee.

In the Lead Opinion, the Court stated:

> The Court's ability to examine the substance of the transaction as a whole, however, is limited by the context in which the issue is presented to the Court.  On a Rule 12(c) motion, the Court may not receive evidence outside the narrow transaction documents to determine the parties' intent in entering into the [Lease Bonds].  At this point, the Court is limited to the parties' pleadings and the plain language of the documents attached to, or incorporated in, those pleadings.  Unquestionably, the [Lease Bonds] at issue here name only CMC as an obligee; in fact, there is no mention of any of the investor Banks in any of the [Lease Bonds].

> The Banks argue that the Court's evaluation of the transaction documents should not be limited to the [Lease Bonds]; rather, the Court must also consider the indemnity agreements between CMC and the Sureties.  The Banks assert that construing these documents together permits the Court to divine the intent of the parties and[,] thus, the true substance of their transaction.  The Court agrees that the indemnity agreements, which designate CMC as principal, and affirmatively oblige CMC to indemnify each respective Surety, shed significant light on the transaction and tend

now those intermediaries that the Ohio Banks urge should be given original obligee status.

> to indicate the Sureties' intent to benefit parties other than CMC through the lease guarantee transactions.  The difficulty is that the Banks' proposed construction contradicts the plain language of the [Lease Bonds], each of which explicitly conveys rights only to CMC.  The Court finds that it may disregard the plain language of those documents only through a reformation of the [Lease Bonds], or by finding – after consideration of all aspects of the parties' relationship – that the intention of the parties is other than as expressed in those [Lease Bonds].

Doc. 1708, at 25-26.  Thus, after an invitation from the Banks to construe the transaction documents as a matter of law, the Court reached several conclusions: (1) the Lease Bonds unambiguously named CMC and only CMC as the obligee entitled to payment thereunder; (2) when the transaction documents were viewed as a whole, the Court's conclusion that the Lease Bonds unambiguously named CMC as the obligee and the only obligee remained unchanged; (3) aspects of the transaction documents reflected a possible intention to convey the benefits of the Lease Bonds to entities other than CMC; and (4) due to the unambiguous nature of the Lease Bonds, the only way to give effect to that possible alternative intention was through reformation of the Lease Bonds.

In its Bench Trial Opinion, issued May 28, 2010 (Doc. 2459), the Court again considered the proper standard to be applied when considering the Banks' (or their intermediaries') claims of obligee status on the Lease Bonds.  In the Bench Trial Opinion, the Court first applied California law to determine whether the parties' agreement (as memorialized in the Lease Bonds and other transaction documents) was ambiguous. *See, e.g., Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (Cal. App. 2d Dist. 2004).  The Court noted that, pursuant to California law, contractual ambiguity is determined as a matter of law after receiving (without formally admitting) extrinsic evidence of the parties' intent. *See id.*  "An ambiguity arises only if there is more than one construction in issue which is semantically permissible . . . ." *Schaffter v. Creative*

*Capital Leasing Group, LLC*, 166 Cal. App. 4th 745, 751 (Cal. App. 4th Dist. 2008)(internal

quotation omitted).  "Extrinsic evidence is admissible to interpret the instrument, but not to give

it a meaning to which it is not reasonably susceptible. . . ." *Parsons v. Bristol Development Co.*,

62 Cal. 2d 861, 865 (1965)(internal quotation omitted).

Applying the above standards in the Bench Trial Opinion, the Court reexamined its

conclusions in the Lead Opinion in light of the substantial evidence presented by both parties

during the bench trial proceedings.  Upon consideration of the transaction documents and the

evidence presented, the Court confirmed its finding that the Banks could establish the "obligee"

status of their intermediaries under the Lease Bonds only through reformation of the language of

the bonds.  The Court stated in the Bench Trial Opinion:

> In the Court's view, even considering the Lease Bonds in light of
> the extrinsic evidence presented, those Bonds cannot be construed
> as ambiguous in the sense that "CMC" is susceptible to meaning
> "Guardian."  As one California court has explained:

> "[E]vidence of the meaning the parties gave to the contract
> language is only relevant if the contract language itself is
> reasonably susceptible to that meaning.  Thus, extrinsic evidence
> cannot be used to show that when the parties said "Bunker Hill
> Monument" they meant "the Old South Church" or that when they
> said "pencils" they really meant "car batteries". . . ." *Curry v.
> Moody*, 48 Cal. Rptr. 2d 627, 631 (Cal. App. 2d Dist.
> 1995)(citations omitted).

> ***

> For the reasons set forth in the Lead Opinion and in sections II.B.1.
> and II.C.1. of this Opinion, the Court finds that the Lease Bonds
> unambiguously denominate CMC as obligee and are not
> susceptible to a contractual construction that would inject the
> Guardian Entities into the language of the Lease Bonds.
> Accordingly, Plaintiffs may prevail in this action only by
> demonstrating, by clear and convincing evidence, that the language
> of the Lease Bonds did not reflect the parties' actual intent to name
> the Guardian Entities as obligees. . . .

Bench Trial Opinion, Doc. 2459, at 37-38.

The Court has reviewed the transaction documents in this case, and finds that they are virtually identical in all relevant aspects to those considered both in the Lead Opinion and in the Bench Trial Opinion.  As explained in the Court's prior opinions, the Lease Bonds unambiguously denominate CMC as "obligee," and are not reasonably susceptible on their face to a contractual construction whereby a party other than CMC would have obligee rights.  As also set forth in this Court's prior opinions, the other transaction documents, including the SSAs and indemnity agreements, contain insufficient indicia of intent to alter the plain language of the Lease Bonds.

The Court has reached its conclusions herein based upon consideration of the plain language of the transaction documents in this case.  To the extent, however, that this Court may be required to receive extrinsic evidence on a provisional basis, the Court also has conducted a provisional review of all evidence submitted by Bank One in support of its briefing on this issue. Again, the Court's review of the extrinsic evidence fails to demonstrate any ambiguity in the plain language of the transaction documents.  The Court finds, therefore, that the transaction documents unambiguously grant obligee status to CMC, and thus Bank One may demonstrate its entitlement to obligee status only through reformation.

### B.    Reformation is an Equitable Claim for the Court

It is well-established in federal courts that reformation is an equitable issue triable to the Court, not to a jury. *See, e.g., Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1502 (5th Cir. 1992)("a reformation is an equitable decision made by the court, not the jury**,** and the parties are not entitled to a jury trial. . . ."); *Phillips v. Kaplus*, 764 F.2d 807, 814 (11th Cir. 1985)(plaintiff's request for reformation "presented traditional equitable proceedings, and the

district court was correct in denying a jury trial. . . ."); *Nat Harrison Associates, Inc. v. Louisville Gas & Electric Co.*, 512 F.2d 511, 512, n.2 (6th Cir. 1975)("[a]n action for reformation of contract . . . is equitable in nature and hence triable to the court. . . .").

Federal district courts consistently have followed the rule articulated in *Giant Eagle*, and have declined to permit a jury trial on claims in equity where there are no common issues of fact underlying the legal and equitable claims. *See, e.g., Bennington Foods, L.L.C. v. St. Croix Renaissance Group, L.L.L.P.*, 2010 U.S. Dist. LEXIS 39038, *20-21 (D.V.I. Apr. 20, 2010)(unpublished disposition)("here, there were no common issues of fact underlying the equitable issue of reformation and the legal issue of breach of contract. . . .  Accordingly, the court's ruling on the equitable counterclaim for reformation prior to the jury's resolution of the legal claim for breach did not violate the rule set forth in *Beacon Theatres* and its progeny. . . ."). This Court agrees.

Bank One relies on *Beacon Theatres*, 359 U.S. at 510, for the proposition that, where both legal and equitable claims have been asserted by the parties, the legal claims must be resolved by a jury in the first instance.  *Beacon Theatres*, however, is entirely distinguishable, and does not support Bank One's argument.  In *Beacon*, the Supreme Court was confronted with a case in which the parties had asserted essentially mirror-image causes of action.  Plaintiff had filed an action for declaratory relief relating to matters arising under the antitrust statutes, and defendant had responded with a counterclaim for damages under the same statutes. *See id.* at 502-503.  The Supreme Court held that (1) plaintiff's declaratory judgment action could not be viewed as raising purely equitable claims in the traditional sense, *see id.* at 507-508; and (2) where resolution of the declaratory judgment claims necessarily would require determination

of the mirror-image legal claims, treating the declaratory judgment claim as purely equitable <u>in that context</u> would violate defendant's Seventh Amendment right to jury trial. *See id.* at 510-511.

While Bank One suggests that a mere overlap in evidence between the legal and equitable claims justifies consolidating all claims in a jury trial, *Beacon Theatres* provides no support for this argument.  As described above, *Beacon* involved a situation where the parties asserted mirror-image claims, and the Court's resolution of the equitable claims would necessarily involve determination of the same issues involved in the legal claims.  The reasoning in *Beacon* rested on an overlap <u>in legal issues</u>, and not on an asserted overlap <u>in evidence</u> relating to separate issues.  Thus, *Beacon* in no way precludes this Court from deciding an equitable issue—particularly a threshold one—merely because there may be some overlap in the evidence.  The Court finds, accordingly, that if the issues underlying the reformation claim are distinct from those underlying the legal claims in this case, Bank One is not entitled to a jury trial on its reformation claim.

### C.   Bank One's Assertion of Legal Claims Does Not Prevent the Court from Assessing the Propriety of Reformation as a Threshold Question.

The Court finds that the legal issues as to which Bank One claims a jury trial right are severable from the issue of Bank One's obligee status in this case.  First, while the Court agrees with Bank One's general proposition that bad faith claims are subject to jury determination, Bank One's bad faith claim is not governed by the Court's conclusions on obligee status.  Bank One's bad faith claim (to the extent that claim remains viable following the Court's March 11, 2009 Order granting Safeco summary judgment on that claim) is premised on Safeco's <u>post-transactional</u> conduct in connection with its handling of Bank One's claims.  The Court's determination of the obligee issue, on the other hand, will focus on an inquiry as to the parties' intent <u>at the time</u> the Guardian II and Guardian III transactions were consummated.  While post-

transactional actions may be relevant to that question, they are only marginally so.  Further, as pointed out by Safeco, the Court's findings on the obligee issue will have no impact on Bank One's ability to present its bad faith claims to a jury at a later stage of this case.

The Court also rejects Bank One's assertion that a jury trial is required on its novation claim.  While Bank One suggests that questions of fact related to the novation issue require a jury determination, the Court carefully has examined Bank One's brief and the attached exhibits, and has found no evidence raising factual disputes on the issue of novation.  In the extensive briefing and evidentiary submissions proffered by Bank One, the issue of novation is given cursory treatment in only one page of Bank One's brief.  It is plain from a review of Bank One's submission that (1) Bank One seeks to introduce no testimony or other extrinsic evidence as to the issue of novation; and (2) Bank One's novation claim is premised on the language of the transaction documents alone.

As noted in the case law relied upon by Bank One, where "the [novation] issue turns upon the meaning of a written instrument and there is no conflicting extrinsic evidence, then the question is one of law upon which a reviewing court may exercise its independent judgment. . . ." *Howard v. County of Amador*, 220 Cal. App. 3d 962, 980 (Cal. App. 3d Dist. 1990).  Accordingly, in these circumstances, this Court may examine the transaction documents and determine whether any intent to effect a novation appears within those documents.  No jury trial is required on this issue.

Bank One also has argued that issues relating to the scope of Safeco's waiver of fraud defenses are fact issues properly subject to determination by a jury.  Even if the Court were to accept this proposition, that fact would have no impact on this Court's determination of the obligee issue.  This Court previously accepted the Banks' argument that the plain language of the

fraud waivers is sufficiently broad to encompass allegations of fraud by CMC. *See* Lead Opinion, Doc. 1708, at 39.  This Court also held, however, that a resolution of the issue of obligee status is <u>a necessary predicate</u> to determining whether the fraud waiver provision may be applied in full against Safeco.

As the Court noted in the Lead Opinion (Doc. 1708, at 38-39), <u>if</u> the Court were to determine that CMC was the intended original obligee on the Lease Bonds, then the fraud waiver provision—regardless of its linguistic breadth—could not be applied to bar Safeco's assertion of a fraud in the inducement defense.  On the other hand, as the Court observed in the Lead Opinion, if the Banks were found to be original obligees, then the fraud waiver provision would be fully and broadly enforceable against Safeco. *See* Doc. 1708, at 39.  In either case, however, the resolution of the obligee issue is necessarily separate from—and antecedent to—any determination of the application of the fraud waiver language.

With respect to the issue of estoppel, to the extent that claim is based upon evidence outside the transaction documents, the Court agrees with Bank One that such a claim is properly subject to jury determination.[7] *See, e.g., Albers*, 62 Cal. 2d at 266; *Feduniak*, 148 Cal. App. 4th at 1360.  Again, however, to the extent Bank One's estoppel claim is premised on Safeco's post-transactional conduct, rather than the transactional documents, such a claim will be unaffected by this Court's findings with respect to the obligee issue.  Bank One may pursue its claim of estoppel against Safeco regardless of this Court's findings on the equitable issue of reformation.

Finally, in the event that Bank One is found <u>not</u> to be the original intended obligee on the Lease Bonds, evidence relating to questions of reasonable reliance undoubtedly would be

---

[7] To the extent the estoppel claim is based solely on the "comfort letters" or other transaction documents, however, the Court is of the view that "where the facts are undisputed and only one reasonable conclusion can be drawn from them, whether estoppel applies is a question of law. . . ." *Feduniak v. California Coastal Com.*, 148 Cal. App. 4th 1346, 1360 (Cal. App. 6th Dist. 2007).

appropriate for submission to a jury in connection with an evaluation of Safeco's fraud defense. As the Court has explained, however, Safeco may invoke its fraud defense only in the event that Bank One fails to prevail on its claims of obligee status.  Accordingly, evidence relating to Safeco's reasonable reliance on CMC's representations could be relevant to these proceedings only after the initial resolution of the obligee issue.  For precisely this reason, the issue of reasonable reliance is entirely severable from the obligee issue, and does not grant Bank One the right to a jury trial on the equitable issue of reformation.

The Court will, accordingly, schedule a bench trial for determination of the issue of obligee status in the transactions involved in this case.  In issuing the rulings set forth herein, the Court makes no determination as to whether Bank One eventually can demonstrate, through the introduction of extrinsic evidence or otherwise, that the parties actually intended to grant obligee status to the Guardian Entities, or to any party other than CMC.

## III.    Conclusion

For the foregoing reasons, the Court rejects Bank One's arguments and finds that the obligee issue is a purely equitable one subject to resolution by the Court.  Accordingly, the Court will schedule a bench trial for determination of the issue of obligee status in the transactions involved in this case.

**IT IS SO ORDERED.**

> **s/Kathleen M. O'Malley**_____
> **KATHLEEN McDONALD O'MALLEY**
> **UNITED STATES DISTRICT JUDGE**

**Dated: June 14, 2010**

74808-1