UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JP Morgan Chase Bank, N.A.
(Successor by Merger to Bank One, N.A.)         Case No. 02-16014
               Plaintiff

      -vs-

Safeco Insurance Company of America,            ORDER

               Defendant


Defendant Safeco seeks partial summary judgment against plaintiff JPMorgan Chase Bank, N.A. (successor by merger to Bank One, NA)("Bank One") as to Counts I (Breach of Fiduciary Duty), VII (Fraud/Misrepresentation),[1] and IX (Ohio Deceptive Trade Practices Act) of the Amended Complaint. (Doc. 187).

Familiarity with the complex factual background of these cases is assumed.  For detailed factual background, see earlier bench trial opinions, Case Nos. 02-16000, Doc. 2459 and 02-16014, Doc. 131(collectively, Bench Trial Opinions).[2]  This Opinion sets forth only the limited universe of facts pertinent to this opinion.

For the following reasons I grant Safeco's Motion in part and deny it in part.

---

[1] Bank One has not opposed Safeco's Motion with respect to Count VII (Fraud/Misrepresentation) of its Amended Complaint.  As such, the Court does not address this Count further.

[2] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Bench Trial Opinions, as applicable.

**BACKGROUND**

This case arises from lease bonds, through which defendant Safeco guaranteed payment of the income stream generated from leases from Commercial Money Center, Inc. (CMC) to lessees of equipment which CMC provided. CMC funded its own purchase of the equipment with loans. The Safeco bonds were part of the assurance given to those institutions that they would receive the income stream, which CMC assigned to them as security for the loans. Bank One was an assignee in several separate transactions of the income stream and, as well, the Safeco bonds.

In Bank One's instance, it first provided the funds to an intermediary, a "Guardian Entity."[3] The Guardian Entities acquired an interest in the CMC lease bonds and/or the income stream which those bonds guaranteed. To obtain the income stream from CMC, a Guardian Entity would provide funds to CMC, which, in turn, obtained the equipment and leased it to the lessees.

After issuance of the Safeco bonds, the parties to each transaction executed a Sales and Servicing Agreement (SSA). The SSA memorialized various rights and obligations, primarily pertaining to servicing of the leases.

CMC went defunct. Its lease stream dried up completely. Bank One now seeks to recover on the lease bonds. It also asserts other claims based on breach of Safeco's obligations under the SSAs. Safeco denied liability on the lease bonds, and asserts the affirmative defense of fraud in the inducement by CMC, which originally arranged for the lease bonds. Safeco seeks rescission of the bonds and the SSAs.

---

[3] "Guardian Entities" means Guardian Capital II, LLC; and Guardian Capital III, LLC. Those entities are no longer part of this litigation.

**DISCUSSION**

In its Motion, Safeco argues that I should dismiss each of the referenced claims for several separate reasons. I address each of Safeco's arguments as to each challenged claim in turn.

**A.    Breach of Fiduciary Duty**

Safeco argues with regard to the claim for breach of fiduciary duty, that Bank One, as the holder of rights *via* a security interest, has no right to assert tort claims against Safeco. Safeco points out that, based on the parties' stipulated facts, the Court's findings in the Bench Trial Opinion in this case included the following:

> In each transaction, the relevant Guardian Entity used the loan proceeds to purchase the income stream from CMC lease pools, and secured payment of all obligations under the loans by <u>granting Bank One a security interest in the assets purchased from CMC</u>.

Doc. 131, at 6 (emphasis added). Safeco argues that, since Bank One holds its rights solely by virtue of a security interest, Ohio's version of the Uniform Commercial Code prohibits Bank One from asserting a claim grounded in tort.

Safeco cites to former Ohio Rev. Code Sec. 1309.04(J), in effect when the Guardian Entities and Bank One executed the Credit and Security Agreements. That section provided that "Sections 1309.01 to 1309.50 of the Revised Code [UCC Article 9] do not apply *** to a transfer in whole or in part of any claim arising out of a tort."[4]  A claim for breach of fiduciary duty sounds in tort under Ohio law. *See, e.g., Nixon v. Bank One of Eastern Ohio, N.A.*, 74 Ohio App. 3d 550, 553 (10th Dist. 1991). As such, Safeco cites various authorities in support of the

---

[4] Alternatively, Safeco argues that the 2001 revisions to UCC Article 9 (Ohio Rev. Code Secs. 1309.109(D)(12), 1309.102(A)(42), 1309.108(E)(1), 1309.204(B)(2)) still would preclude Bank One's claim for breach of fiduciary duty. (*See* Doc. 187, at 8-9).

3

proposition that tort claims could not have been included among the rights conveyed to Bank One in the Credit and Security Agreements. *See, e.g., Sicherman v. Falkenberg*, 136 B.R. 481, 485 (Bankr. N.D. Ohio 1992); *KMA Acquisitions Corp. v. Coleman*, 1993 Ohio App. LEXIS 5108, *7 (10th Dist. Oct. 19, 1993).

In its opposition brief Bank One first argues that Safeco has conceded its right to pursue claims for breach of fiduciary duty. Bank One points out that, in February, 2008, it moved for partial summary judgment, seeking a determination that it had standing to assert all right, title and interest of the Guardian Entities in the lease bonds and Sale and Servicing Agreements (SSAs). (Doc. 46). Bank One premised its motion on Sec. 5.3(e) of the Credit and Security Agreements between the Guardian Entities and Bank One. That section provided that, upon an Event of Default, Bank One could take "all steps, actions, suits, or proceedings deemed by [Bank One] necessary or desirable to effect the receipt, enforcement, and collection of the Collateral . . . ." (Doc. 36, Exhs. 7, 9).

After Bank One filed its motion for summary judgment, Safeco withdrew its Fifth Affirmative Defense, asserting Bank One lacked standing to claim all right, title and interest of the Guardian Entities in the lease bonds and SSAs. Based on Safeco's withdrawal of its Fifth Affirmative Defense, Judge Kathleen M. O'Malley, to whom this case previously was assigned, determined that Safeco had conceded the issue of Bank One's standing. (Doc. 52, n.3). Bank One now asserts that Safeco's withdrawal of its Fifth Affirmative Defense, and the Court's recognition of Bank One's standing, conclusively established Bank One's right to pursue <u>all</u> claims that the Guardian Entities could have pursued, including tort claims for breach of fiduciary duty.

Additionally, Bank One argues that it possesses <u>assignee</u> interests, as well as its security

4

interests, in both the lease bonds and SSAs. Bank One asserts that Sec. 5.1 of the Credit and Security Agreements granted Bank One an assignment of rights in both the lease bonds and SSAs.[5]

Bank One cites Ohio, , *e.g., Leber v. Buckeye Union Ins. Co.*, 125 Ohio App. 3d 321, 332 (6th Dist. 1997), *quoting Inter Ins. Exchange v. Wagstaff*, 144 Ohio St. 457 (1945), and Nevada, *e.g., 3685 San Fernando Lenders, LLC v. Compass USA SPE, LLC (In re USA Commer. Mortg. Co.)*, 802 F. Supp. 2d 1147, 1162 (D. Nev. 2011); *Commercial Credit Corp. v. Matthews*, 77 Nev. 377, 391 (1961) case law in support of the proposition that, as assignee, it "succeeds to all the rights and remedies" of the Guardian Entities. Bank One argues that, even if it did not acquire the right to pursue claims for breach of fiduciary duty by virtue of its security interest, it acquired such rights via the assignments from the Guardian Entities.[6]

In its reply memorandum, Safeco vigorously disputes the assertion that its withdrawal of the Fifth Affirmative Defense effectively conceded Bank One's right to pursue tort claims against Safeco. Rather, Safeco asserts, its withdrawal of that defense did no more than acknowledge (based on the Guardian Entities' default pursuant to Article 9 of the UCC) Bank One's right to pursue the Guardian Entities' <u>contract</u> claims under the bonds. According to Safeco, its acknowledgment of Bank One's contractual standing did not, and could not, grant

---

[5] Section 5.1 of the Credit and Security Agreements provides that "Borrower hereby grants to Bank a security interest in <u>and an assignment of</u> the Collateral . . . ." (emphasis added). (02-16014, Doc. 208-6). The Credit and Security Agreements define "Collateral" as including "(a) the Leases and all of Borrower's right, title and interest therein . . .; (e) all rights under any surety bond issued to protect Borrower against losses incurred due to default by a lessee under the Leases; including, but not limited to, the Surety Bonds issued by Safeco . . . ; (f) . . . the Sale and Servicing Agreement dated as of December 1, 1999 [February 10, 2000] among Borrower, Commercial Money Center, Inc. and Safeco, and all of Borrower's right, title, and interest therein or thereunder . . . ." (Doc. 36).

[6] In the alternative, Bank One argues, the fiduciary duties upon which its claim is premised are memorialized in a contract between the parties—the SSAs. As such, Bank One asserts that the claims in question are contract claims as well as tort claims, and are not barred by the UCC provisions upon which Safeco relies. *See, e.g., Creaturo v. Duko*, 2005 Ohio 1342 at ¶ 39 (7th Dist. Mar. 14, 2005)(fiduciary duties "may also be memorialized in a written contract. If this is the case, then the breach of those duties will also be a breach of the contract . . . ."). Given the Court's findings in this section, the Court need not address this argument.

Bank One greater rights than those accorded to it by Article 9.

Safeco also challenges Bank One's assertion that it acquired the right to assert tort claims against Safeco via assignment from the Guardian Entities. Although Safeco acknowledges Bank One's acquisition of interests in the lease bonds via assignment, Safeco contends that Bank One did not receive any assignment <u>of the SSAs</u>. Despite the assignment language in the Credit and Security Agreements, Safeco argues that an effective assignment of the SSAs did not occur, because the Guardian Entities failed to comply with Sec. 2.9 of the SSAs, which required notice of the assignment to be delivered to Safeco.

I decline to preclude Bank One's claim for breach of fiduciary duty. While I agree with Safeco's general description of the applicable UCC provisions, I also recognize that the Credit and Security Agreements provide for an <u>assignment</u> to Bank One of the Guardian Entities' interests in both the lease bonds and SSAs.

Safeco asserts the Guardian Entities' failure to comply with the notice provisions in the SSAs renders the assignment of the SSAs to Bank One ineffective. This argument appears for the first time in Safeco's reply brief. Bank One has not had the opportunity to brief the issue of whether actual notice to Safeco of the assignment of the SSAs constituted substantial compliance with the notice provisions of the SSAs. At a minimum, an issue of fact exists as to the effectiveness of the assignment of rights under the SSAs to Bank One. Accordingly, Safeco's motion for summary judgment as to Count I of Bank One's Amended Complaint is <u>denied</u>.[7]

---

[7] In addition to its assertion that the UCC bars Bank One's fiduciary duty claim, Safeco contends that the fiduciary duty claim is precluded by the holding in the Bench Trial Opinion (Doc. 131). In that Opinion, Judge O'Malley considered Bank One's claims of actual and constructive fraud in the narrow context of Bank One's claims for reformation of the lease bonds. In that context, Judge O'Malley "categorically reject[ed] Bank One's contention that Safeco assumed any fiduciary duty to it or to the Guardian Entities <u>relative to the negotiation of the Lease Bonds</u>." (Doc. 131, at 121)(emphasis added). Safeco argues that this holding precludes any fiduciary duty claim by Bank One. Given the narrow factual context of the findings in the Bench Trial Opinion, and the broader factual basis for the claims asserted here, I reject Safeco's argument.

### B. Claim Under the Ohio Deceptive Trade Practices Act

Safeco asserts Bank One cannot pursue its claim under the Ohio Deceptive Trade Practices Act (ODTPA). Safeco argues, first, that the Bench Trial Opinion bars Bank One's ODTPA claim, since that claim is merely a restatement of Bank One's prior, unsuccessful arguments that: 1) Bank One is the original "obligee" on the lease bonds; and/or 2) Safeco's denial of Bank One's bond claims was wrongful. Second, Safeco contends, the ODTPA claims do not allege any independently tortious conduct, and are merely recast breach of contract claims.

The bank premises the ODTPA claim on alleged misrepresentations by Safeco that its "'services' had the approvals, characteristics and/or benefits set forth in the Safeco Bonds, Estoppel Letters, and SSAs. Safeco made these misrepresentations, Bank One alleged, to induce Bank One to enter into the Transactions. Bank One claims the "'services' did not have the approval, characteristics and/or benefits as represented to Bank One, in violation of Ohio R.C. § 4165.02(A)(7)." (Doc. 36, ¶ 154).

In Safeco's view, Bank One is claiming that when Safeco denied the Bank's demand for payment on the bonds, it breached the representations Safeco made when it issued the bonds. Safeco argues that Judge O'Malley addressed Bank One's allegations as to Safeco's alleged misrepresentations in the Bench Trial Opinion, in which she held CMC was the original intended obligee.

As Safeco points out, Judge O'Malley considered Bank One's allegations of actual and constructive fraud in connection with Bank One's reformation claims. With respect to both theories, Safeco notes, the Court found insufficient evidence to sustain Bank One's burden of proof. (*See* Doc. 131, at 119).

7

Further, Safeco argues, Judge O'Malley previously granted summary judgment on Bank One's claim for bad faith claims handling. (Case No. 02-16000, Doc. 2214). Insofar as Bank One's ODTPA claim relies on the same factual allegations addressed in those decisions, Safeco argues that it should have summary judgment on that claim.

In its opposition memorandum Bank One contends that neither the summary judgment ruling nor Bench Trial Opinion bars its ODTPA claim. This is so, according to Bank One, because neither decision made any mention of Bank One's ODTPA claim.

According to Bank One, it bases its ODTPA claim on Safeco's representations to Bank One that certain loan mitigants were in place. These alleged mitigants included: 1) the assignment and grant of security interests; 2) Safeco's commitment to satisfy any payment default; 3) Safeco's commitment to carry out its obligations as servicer; and 4) Safeco's commitment to honor the representations in the comfort letters. Bank One asserts that Safeco's entering into allegedly undisclosed indemnity agreements with CMC constituted a breach of all of these obligations, and threatened the validity and enforceability of the bonds.

As Bank One points out, to demonstrate a violation of the ODTPA, it must prove:

(a) The defendant made a false statement or a statement which is misleading;

(b) The statement actually deceived or has the tendency to deceive a substantial segment of the target audience;

(c) The deception is material in that it is likely to influence a purchasing decision; and

(d) The plaintiff has been or is likely to be injured as a result of the advertisement . . . .

*Int'l Diamond Exch. Jewelers, Inc. v. U.S. Diamond & Gold Jewelers, Inc.,* 70 Ohio App. 3d 667, 676 (2d Dist. 1991).

8

Bank One states that Safeco made material false statements to it concerning the loan mitigants described above, and that Bank One relied on but was deceived by those false representations when it purchased its interests in the lease bonds. The basic problem with each of the alleged false statements is that each of them was contained either in the contract documents or comfort letters, which confirmed and memorialized the provisions of the contract documents. But Bank One does not identify a single misrepresentation outside these documents.[8]

Moreover, and most importantly, Bank One has presented no evidence that Safeco had any intent (when it executed the lease bonds) to breach the contract, or any knowledge that the representations contained in the contract documents would turn out to be false. The absence of such evidence renders a tort framework unavailable for these claims.

As for Safeco's alleged execution of "undisclosed" indemnity agreements with CMC, there is no evidence that Safeco's execution of such agreements was contrary to any representation to Bank One. Nor is there any evidence that execution of such indemnity agreements prejudiced Bank One in any way. Although Bank One states that these agreements had a "potentially devastating impact . . . on the bonds' validity and enforceability . . .," it provides no support for this assertion.[9]

---

[8] In opposition to Safeco's motion, Bank One provides an affidavit of Moses Jhirad (Doc. 208-1, ¶ 14), in which Mr. Jhirad describes his prior testimony from the bench trial proceedings. During those proceedings, Mr. Jhirad testified that Michael Anthony told him that Safeco "would make good on the bonds" even in the case of fraud or default by other parties to the transactions. As noted by the Court in the Bench Trial Opinion, however, no Bank One witness (or any other witness) testified that discussions occurred with respect to whether the bonds were intended to cover fraud in the inducement by CMC. (Doc. 131, at 55).

[9] To the contrary, during the bench trial proceedings, Bank One spent a great deal of time attempting to prove that Safeco had entered into such indemnity agreements with CMC. Bank One presumably took this position because it believed that Safeco's acceptance of indemnity from CMC strengthened Bank One's argument that CMC was a principal in the lease bond transactions, while Bank One was the intended obligee. Although the Court rejected Bank One's argument, it is difficult to see how Bank One could have benefited from the opposite scenario. If Safeco had not entered into the indemnity agreements with CMC, CMC still would have been the original obligee on the lease bonds, and Bank One would have remained an assignee, subject to all defenses that could have been

I also reject Bank One's assertion that Safeco committed a deceptive trade practice by "manufacturing" a fraud defense. Although fraud generally is a fact-based inquiry, there is simply no evidence that Safeco: 1) knew CMC would commit fraud against Bank One; 2) elected to enter into the lease bond transactions notwithstanding that knowledge; and 3) intended from the outset to evade payment under the bonds *via* a fraud defense.

Bank One states claims, in essence, for contractual breach and it fails to establish a violation of the ODTPA. Accordingly, Safeco's motion for summary judgment as to Count IX of Bank One's Amended Complaint is granted.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED THAT Safeco's Motion for Partial Summary Judgment (Doc. 187) be denied in part and granted in part.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

asserted against CMC. In other words, Bank One's position vis-à-vis Safeco would have remained completely unchanged. Either way, of course, the execution of the indemnity agreements had no impact on the validity or enforceability of the bonds. The bonds remain valid and enforceable by Bank One as assignee—subject to a narrow defense based upon fraud in the inducement by CMC. Among the other reasons set forth for the Court's decision here, Bank One's argument simply makes no sense.