UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JP Morgan Chase Bank, N.A.
(Successor by Merger to Bank One, N.A.)          Case No. 02-16014
                Plaintiff

     -vs-

Safeco Insurance Company of America,             **ORDER**

                Defendant

Pending are countermotions by plaintiff JPMorgan Chase Bank, N.A. (successor by merger to Bank One, NA)(Bank One)(Doc. 189) and defendant, Safeco Insurance Company of America (Safeco)(Doc. 188) on the issue of the putative dual agency of Michael Anthony.

Familiarity with the complex factual background of these cases is assumed. For detailed factual background, see earlier bench trial opinions, Case Nos. 02-16000, Doc. 2459 and 02-16014, Doc. 131(collectively, Bench Trial Opinions).[1] This Opinion sets forth only the limited universe of facts pertinent to this opinion.

For the reasons that follow, I grant Bank One's Motion for Partial Summary Judgment and deny Safeco's Motion for Partial Summary Judgment.

**BACKGROUND**

This case arises from lease bonds, through which defendant Safeco guaranteed payment of the income stream generated from leases from Commercial Money Center, Inc. (CMC) to

---

[1] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Bench Trial Opinions, as applicable.

1

lessees of equipment which CMC provided.  CMC funded its own purchase of the equipment with loans.  The Safeco bonds were part of the assurance given to those institutions that they would receive the income stream, which CMC assigned to them as security for the loans.  Bank One was an assignee in several separate transactions of the income stream and, as well, the Safeco bonds.

In Bank One's instance, it first provided the funds to an intermediary, a "Guardian Entity."[2]  The Guardian Entities acquired an interest in the CMC lease bonds and/or the income stream which those bonds guaranteed.  To obtain the income stream from CMC, a Guardian Entity would provide funds to CMC, which, in turn, obtained the equipment and leased it to the lessees.

After issuance of the Safeco bonds, the parties to each transaction executed a Sale and Servicing Agreement (SSA). The SSA memorialized various rights and obligations, primarily pertaining to servicing of the leases.

CMC went defunct.  Its lease stream dried up completely. Bank One now seeks to recover on the lease bonds.  It also asserts other claims based on breach of Safeco's obligations under the SSAs.  Safeco denied liability on the lease bonds, and asserts the affirmative defense of fraud in the inducement by CMC, which originally arranged for the lease bonds.  Safeco seeks rescission of the bonds and the SSAs.

For purposes of these motions, all parties appear to agree as to the following essential facts.  Anthony & Morgan Surety & Insurance Services, Inc. (A&M) was an independent lease broker.  Michael Anthony was a principal of A&M.  In connection with the CMC lease bond program, Safeco granted limited powers of attorney to Anthony and A&M, thereby authorizing

---

[2] "Guardian Entities" means Guardian Capital II, LLC; and Guardian Capital III, LLC.  Those entities are no longer part of this litigation.

Anthony to sign and issue lease bonds in favor of CMC. By separate letters, Safeco also granted Anthony authority to execute Sale and Servicing Agreements (SSAs) on behalf of Safeco. Pursuant to the Safeco powers of attorney and letters, Anthony executed each of the bonds and SSAs at issue in this case.

Throughout the relevant time period Anthony also had a close working relationship with CMC. Anthony received substantial commissions, amounting to approximately $3.75 million over the course of the CMC program, from CMC on the lease pool transactions. Although Safeco apparently was aware that Anthony was working on behalf of both CMC and Safeco, neither Anthony nor CMC disclosed to Safeco the existence or the magnitude of the commission payments received by Anthony from CMC.

## DISCUSSION

### A. Parties' Positions

Safeco asserts that Anthony's alleged status as a secretly compensated dual agent entitles it to avoid all payment on the bonds and SSAs. Safeco contends that, as its attorney-in-fact, Anthony assumed fiduciary duties to Safeco, including the duties of good faith and disclosure of all material facts. Safeco relies on basic California case law to support these propositions. *See, e.g., Thompson v. Stoakes*, 46 Cal. App. 2d 285, 289 (1st Dist. 1941)("It is elementary, of course, that an agent is duty bound to disclose to his principal all material facts and circumstances of the transaction handled by him; that the agent must exercise the utmost good faith; that he must acquire no secret interest adverse to his principal; that he cannot lawfully make a secret personal profit out of the subject of the agency."); *Tran v. Farmers Group, Inc.*, 104 Cal. App. 4th 1202, 1213 (1st Dist. 2002)("an attorney-in-fact is an agent owing a fiduciary duty to the principal.").

Safeco argues that Anthony's receipt of compensation from CMC rendered Anthony CMC's agent as well as Safeco's. Based on these facts, Safeco contends, Anthony was an undisclosed dual agent, entitling Safeco to rescission. In support of this proposition, Safeco relies on *Gordon v. Beck*, 196 Cal. 768, 771-72 (1925), in which the Court stated:

> It is well settled in this state that a principal who has no notice or knowledge of the duplicity of his agent may at his option be relieved from the obligations of the contract as against his opposing principal who had notice or knowledge of such dual agency, either by affirmative action in rescinding the contract or by interposing such dual agency as a defense in an action to enforce the contract. . . . [N]ot even an innocent third party, who is also the principal of the same agent, may be allowed voluntarily to retain benefits or advantages which come to him only through the act of his agent and as the result of that agent's perfidy to his other principal . . . .

Safeco also cites *Vice v. Thacker*, 30 Cal. 2d 84, 90 (1947):

> Where an agent has assumed to act in a double capacity, a principal who has no knowledge of such dual representation . . . may avoid the transaction. Actual injury is not the principle upon which the law holds such transaction voidable; rather, the law holds it voidable in order to prevent the agent from putting himself in a position where he will be tempted to betray his principal . . . . *** It makes no difference that the principal was not in fact injured, or that the agent intended no wrong or that the other party acted in good faith; the double agency is a fraud upon the principal and he is not bound. . . .'

*See also McConnell v. Cowan*, 44 Cal. 2d 805, 809-10, *citing Vice*, 30 Cal. 2d at 90.

Safeco points out that, based upon the principles outlined in these cases, the motive of the alleged dual agent is irrelevant, as is the motive of the other principal. Safeco argues, accordingly, that Anthony's divided loyalties entitle Safeco to rescind the lease bonds and SSAs even if Anthony acted in good faith and without fraudulent intent.

Safeco apparently acknowledges that it knew of Anthony's representation of CMC while also acting as Safeco's attorney-in-fact. Safeco urges, however, that the critical nondisclosure

4

was not the fact of the dual representation, but the fact and amount of CMC's payments to Anthony. In this regard, Safeco, citing *Huijers v. DeMarrais*, 11 Cal. App. 4th 676, 686 (2d Dist. 1992), argues that "it is not enough to disclose only the fact of dual representation. The agent must also disclose all facts which would reasonably affect the judgment of each party in permitting the dual representation.") *See also TV Events & Mktg. v. AMCON Distrib. Co.*, 526 F. Supp. 2d 1118, 1134 (D. Haw. 2007)(although defendants were aware that agent had worked for plaintiffs in the past, and had continued to work for plaintiffs, neither plaintiff nor the agent disclosed to defendants that the agent had received commissions in connection with the transaction at issue).[3]

The cases Safeco cites from both California and elsewhere stand for the proposition that "when an agent acts for adverse principals with the acquiescence of each, he has a bounden duty to act with fairness to each, and is bound to disclose to each all facts which he knows or should know would reasonably affect the judgment of each in permitting such dual agency." *Anderson v. Thacher*, 76 Cal. App. 2d 50, 68 (2d Dist. 1946); *see also* Restatement (3d) of Agency, § 8.06, cmt. c (principal's consent to agent's acquisition of a material benefit in connection with a transaction may be secured only where agent makes "full and fair disclosure."). Safeco further asserts that "it is not enough for the agent to put the principal upon inquiry, but must disclose such material facts as are unknown to the principal and as will enable him to form a reasonably correct opinion and conclusion as to his best interest." *McNeill v. Dobson-Bainbridge Realty Co.*, 184 Tenn. 99, 106 (1946); *see also Wendt v. Fischer*, 243 N.Y. 439, 443 (1926)("[i]f dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity

---

[3] *See also* Restatement (Second) of Agency § 392, cmt. b ("The agent's disclosure must include not only the fact that he is acting on behalf of the other party, but also all facts which are relevant in enabling the principal to make an intelligent determination, such as the prior relations between the agent and the other party, and the knowledge or lack of knowledge by the other party that the agent is acting for the principal . . . .").

5

or reservation, in all its stark significance.").

Safeco has cited only a Georgia appellate case (*Spratlin, Harrington & Thomas, Inc. v. Hawn*, 116 Ga. App. 175 (1967)), in support of its argument that Anthony had to disclose the existence and extent of the compensation from CMC.  In that case defendants retained the plaintiff agency to obtain a loan commitment to finance a shopping mall.  The plaintiff agency told defendants in a letter that it represented two prospective lenders.  Plaintiff submitted defendants' loan application to the lender, and agreed with the lender that Plaintiff would receive a finder's fee and servicing fee at closing.   The court held that plaintiff's failure to reveal that it would receive a fee from the lender was omission of a "pertinent and possibly vital fact." *Id.* at 182.  In the absence of such disclosure, the Court declined to hold "that the defendants 'knew' of the dual agency so as to, in effect, waive the protection of the 'dual agency' rule." *Id.* Accordingly, defendants could rescind the contract and avoid payment of plaintiff's commission.

In response, Bank One argues that Safeco's knowledge of Anthony's role as a dual agent precludes Safeco from rescinding the lease bonds and/or SSAs.[4]  As Bank One points out, Safeco's Senior Underwriting Officer, James Schrader, testified as follows:

> Q. All right.  And—and—and Mr. Anthony as your attorney in fact on the one hand was signing the bonds and signing— and signing the other documents that went to lenders and investors and on the other hand he was touting CMC and their bond pool deals to Safeco; correct?
>
> A. Correct.
>
> Q. And—and I think—
>
> A. *As—as an agent he represented CMC and Safeco.  He*

---

[4] Bank One raises other arguments. It premises these arguments on multiple grounds, including: 1) alleged prior holdings of the MDL Court relating to the actual and/or apparent authority of Michael Anthony; 2) the fraud waiver provision of the lease bonds; 3) the alleged preclusion of the rescission remedy based on the intervening rights of third parties; and 4) Safeco's alleged failure to plead the defense of dual agency fraud.  In light of my findings in this Opinion, I need not address any of Bank One's alternative arguments.

>                *represents both parties.*

(Doc. 189-5, Schrader Depo. at 277:9-18 (emphasis added).

Mr. Schrader further testified that Anthony was "quite a mouthpiece for CMC . . . ." (Doc. 189-5, Schrader Depo. at 277:7; *see also* Schrader Depo. at 296; Doc. 213-1, John Eckert testimony in *FDIC v. Safeco*, at 230:3-4 ("Anthony & Morgan were the representatives for CMC . . . .")). According to Bank One, Safeco never objected to Anthony's relationship with CMC, and in fact considered Anthony's familiarity with the CMC program to be an advantage.

Bank One also notes Safeco performed its own underwriting and independently approved each and every lease bond. (*See* Doc. 189-4, Martin Depo. at 116-119, 133-134; Doc. 189-5, Schrader Depo. at 78:18-79:25; 277-278). Mr. Schrader testified that Mr. Martin traveled to the offices of Shandoro/MedQuik, CMC's lessee, to conduct due diligence. (Doc. 206-3, Schrader Depo. at 77-78).

In fact, Bank One contends, because of Safeco's knowledge of Anthony's relationship with CMC, Safeco restricted the duties that it delegated to Anthony, and granted Anthony no discretion in approving bonds. In this regard, Bank One cites testimony by Martin, Safeco's underwriter, that the authority Safeco granted to Anthony was narrowly circumscribed, and limited essentially to signing the bonds and SSAs. (Doc. 189-4, Martin Depo. at 106). Bank One also relies on the testimony of Safeco's John Eckert:

> Q. All right. And when you say you didn't want Mr. Anthony having the ability to issue the bonds, what was your concern there?
>
> A. Mr. Anthony is an agent.
>
> Q. So notwithstanding his agency or status as attorney-in-fact, he was not part of Safeco? Was that the consideration or something else?

7

A. An agent is out to market. Safeco Surety is out to underwrite it and make money, make a profit. So we would authorize it by Ken Martin.

Q. So it was your position that any lease bonds that were issued by Safeco incident to the CMC lease bond Program should have been issued directly by Mr. Martin or his service center?

A. No, issued by Mike Anthony. There's a difference between "power of attorney" and "underwriting authority."

\*\*\*

Q. All right. We have Mr. Anthony on the marketing side as an agent for Safeco; we have Mr. Martin as a Safeco employee and underwriter. Are those the distinctions that we're dealing with at this point?

A. Yes.

Q. So as relates to Mr. Martin, what did you want him to do, in terms of the functioning in—as a Safeco employee, in the issuance of the CMC lease bond program, of lease bonds?

A. He was to look at each individual lease bond and approve them or disapprove them.

\*\*\*

Q. And Mr. Martin's duties, essentially—stated—you tell me if I'm misstating it—was to conduct thorough underwriting, review whatever information either he needed or that was provided to him, and maintain strong agency communication as related to the CMC lease bond program?

A. Yes.

\*\*\*

Q. Now that is to be distinguished from Mr. Anthony—

A. Yes.

Q. --who was an external, independent agent of Safeco; correct?

8

> A. Yes.
>
> Q. And he was appointed as an attorney-in-fact for Safeco?
>
> A. Yes.
>
> Q. Now, you had indicated earlier—and this is where I must have disconnected—that you didn't want Mr. Anthony to have certain functions or responsibilities in the program?
>
> A. Yes.
>
> Q. And what were those?
>
> A. To have the underwriting authority to issue the bond, to have control of that three months' assets.
>
> Q. That's where I think I misunderstood you. So you did not want Mr. Anthony involved in the underwriting assessment, decision-making, and due diligence process?
>
> A. Right.
>
> ***
>
> Q. Okay. Once Mr. Martin made his underwriting decisions based on his underwriting assessments and analysis, it was only then, in your view, that Mr. Anthony would have been authorized by Safeco to issue the Safeco lease bonds into the CMC lease bond program?
>
> A. Yes.

(Doc. 206-1, Eckert Depo. at 167:21-168:11, 168:21-169:7, 169:20-169:25, 170:3-170:23, 171:10-171:15).

Given the limited nature of Anthony's duties, Bank One argues that Anthony was not strictly an agent, but rather a mere "middleman" with no discretion to bind Safeco or to negotiate the terms of the transaction.[5] Bank One relies on *McConnell v. Cowan*, 44 Cal. 2d 805, 811

---

[5] In a footnote in its opposition brief, Safeco asserts that Bank One's description of the authority it delegated to Anthony, and its characterization of his actions as merely "ministerial," is "patently absurd." Safeco also relies on

9

(1955), a California Supreme Court case describing the legal impact of "middleman" status as follows:

> The word 'middleman' is a short term for describing a situation in which the agent has limited authority, that is, he has no power to and does not negotiate the terms on which the principals will deal, yet he is an agent or he may possibly be an independent contractor, or falls in one of the recognized legal categories. [] Being so limited, there is no opportunity for him to sacrifice the interests of one principal to the detriment of the other and the reason for the dual representation rule fails . . . .

Bank One also asserts that "the rule that an agent acting for both parties and for each without the knowledge of the other can collect commissions from neither, applies only to agents *stricti juris*, and not to middlemen." *Kennedy v. Johnson*, 109 Cal. App. 662, 666 (2d Dist. 1930)(internal quotations omitted), *quoting Carothers v. Caine*, 175 P. 478, 479 (Cal. App. 1918)("[i]t is only when the arrangement of a broker is that of an agent with discretionary authority from his principal in the matter of such employment that he cannot accept employment from another whose interests conflict with those of his principal . . . .").

Bank One also vigorously disputes Safeco's assertion that California law required Anthony to disclose to Safeco the existence and amount of the fees from CMC—or in fact, any facts other than the existence of his dual agency.[6] Bank One points out that California case law on the issue of dual agency refers to the possibility of rescission only where a principal lacks

---

case law to the effect that "[i]f [the agent] takes, or contracts to take, any part in the negotiations, . . . he cannot be regarded as a mere middleman, no matter how slight a part it may be . . . ." *Spratlin*, 116 Ga. App. at 183. Despite its vehement objection, however, Safeco does not challenge any of the substantive evidence on which Bank One relies to support its description of the scope of Anthony's authority. Safeco's reply brief describes contacts by Anthony with: 1) Sureties <u>other than</u> Safeco (presumably on behalf of CMC); and 2) investors, also on behalf of CMC). Safeco does not, however, describe any further duties undertaken by Anthony on behalf of Safeco in its transactions with CMC. It appears, therefore, that Bank One's factual description of the duties Safeco delegated to Anthony is undisputed.

[6] In its opposition brief, Bank One also argues Safeco has failed as a matter of law to establish that Anthony actually was paid by CMC <u>on the transactions involved in these cases</u>. Given my conclusions here, I need not evaluate Safeco's proof on this issue.

10

knowledge *of the dual representation*. *See, e.g., Walsh v. Hooker & Fay*, 212 Cal. App. 2d 450, 457 (1st Dist. 1963)("[i]t is the general rule that where an agent has assumed to act in a double capacity, a principal *who has no knowledge of such dual representation* . . . may avoid the transaction . . . .")(emphasis in original), *quoting Vice*, 30 Cal. 2d at 90; *Gordon*, 196 Cal. at 772 ("if neither principal has *knowledge of the dual capacity of the agent*, the action of the agent is a fraud on both and a contract made under such circumstances is voidable . . . .")(emphasis added)(internal citations omitted).

Bank One argues, therefore, that given Safeco's actual knowledge of the dual representation, Anthony's failure to disclose the terms of his compensation from CMC is irrelevant. In any event, Bank One urges, since Safeco was a sophisticated commercial surety, and had audit rights with respect to the records of CMC, Safeco had every opportunity to discover the terms of Anthony's business relationship with CMC. *See, e.g., United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1190 (C.D. Cal. 2009)(reasonable reliance element of fraudulent inducement claim defeated by plaintiff's failure to conduct audit prior to transaction closing).

**B.     Analysis**

While Safeco correctly states the general proposition that the actions of an undisclosed dual agent may constitute a fraud on the principal, the undisputed facts demonstrate that no such fraud occurred here. Safeco does not dispute that it knew of Anthony's dual role in acting as a representative of both CMC and Safeco. Rather, Safeco urges merely that California law required Anthony to make a more specific disclosure, advising Safeco of the terms of his compensation agreement with CMC. Even if California law supported such a broad disclosure requirement, the facts Anthony withheld from Safeco could not have been material to Safeco's

11

decisionmaking.

This is so because, initially, the cases cited by Safeco do not support the expansive disclosure requirement urged by Safeco in the context of a dual agency. In *Huijers, supra*, 11 Cal. App. 4th at 686, the Court considered a statutory requirement to provide a disclosure statement in the context of a real estate transaction involving dual agency. In that context, the precise scope of the agent's disclosure duty was defined not by California common law, but by the applicable statute. The court found that the real estate broker's failure to provide the statutorily required disclosure form prior to entering into the listing agreement entitled the seller to rescind the listing agreement. *Id.* at 684. The nondisclosure did not, however, entitle the sellers to rescind the purchase agreement, since the statutory disclosure form was provided to the sellers before they signed the purchase agreement. *Id.* at 686. Even if *Huijers* were applicable outside its statutory context, no language in that case suggests that the Court required disclosure of the terms of the agent's compensation. The decision in *Huijers*, rather, appears merely to be an application of the general rule requiring disclosure of a dual representation.

The decision in *TV Events & Mktg.*, 526 F. Supp. 2d at 1133-34 (which is not a California case in any event), also fails to support Safeco's interpretation. That case stands for the proposition that, even where the allegedly defrauded principal is aware that its agent had worked for the other principal in the transaction on other matters, the agent must disclose his dual agency status <u>in the transaction at issue</u>, or risk violating the duties owed to the principal. The *TV Events & Mktg.* court imposed no requirement that the agent had to disclose the existence and terms of his compensation arrangement. In fact, the court in *TV Events & Mktg.* actually appears to confirm the disclosure standard urged by the plaintiffs, stating, "if [the agent] *was an undisclosed agent of TEAM* in breach of his fiduciary duty, Defendants would be entitled to rescind the

contract." *Id.* at 1128 (emphasis added).[7]

Safeco relies most heavily on its citations to out-of-state cases, including *Spratlin*, to support the proposition that Anthony's failure to disclose his compensation prevented Safeco from knowing of Anthony's dual agency. The *Spratlin* case, however, was not based primarily on the agent's failure to disclose its receipt of a fee. Rather, the defendants in *Spratlin* were not aware of the agent's dual agency until they learned of the fee. Moreover, the agent in *Spratlin* had previously represented to defendants that it would not receive any fee from the lender.

Leaving aside the non-binding status of the non-California authorities, the basic thrust of these cases, including *Spratlin*, is simply that an agent is required to disclose *material facts—i.e.*, such facts as could reasonably affect a principal's judgment in the transaction. *See Spratlin supra*, 116 Ga. App. at 181 ("[r]equirements of good faith demand that in the principal's interest it is the agent's duty to make known to the principal all material[] facts which concern the transactions and subject matter of his agency.")(emphasis added); *McNeil*, 184 Tenn. at 106 ("it is not enough for the agent to put the principal upon inquiry, but must disclose such material facts as are unknown to the principal and as will enable him to form a reasonably correct opinion and conclusion .")(emphasis added); *see also Anderson*, 76 Cal. App. 2d at 68 (dual agent has duty to act with fairness to each principal, and to disclose all facts which he knows or should know would reasonably affect the judgment of each in permitting such dual agency.").

Even assuming that the amount of compensation to be received by a known dual agent could, in any circumstances, constitute a material nondisclosure under California law, I do not hesitate to find that such a nondisclosure could not have been material under the undisputed facts

---

[7] Moreover, despite the acknowledged receipt of compensation by the agent in the *TV Events & Mktg.* case, the Court denied defendants' motion for summary judgment, holding that there were "genuine issues of material fact as to whether [the agent] acted on behalf of an adverse party in a transaction connected with his agency relationship with the Defendants . . . ." *TV Events & Mktg.*, 526 F. Supp. 2d at 1134.

13

present here.  It is evident from the testimony of Safeco's witnesses that Safeco knew from the outset of Anthony's profit motive in the transactions. *See* Doc. 206-1, Eckert Depo. at 167:21-168:11, 168:21-169:7, 169:20-169:25, 170:3-170:23, 171:10-171:15.  Whether for this reason or other reasons, it is also plain that Safeco severely restricted the scope of the functions that it delegated to its agent, and granted Anthony no negotiating or approval authority relating to its lease bonds.

Safeco has acknowledged that Anthony played no role either in underwriting or approving the bonds, and his only function was to sign and issue bonds following Safeco's review and approval.  In this context, Anthony had no discretion to exercise, and no opportunity to engage in conflicted behavior that would violate any fiduciary duty to Safeco.

No party to these actions disputes the basic proposition that "an attorney-in-fact is an agent owing a fiduciary duty to the principal." *Tran, supra*, 104 Cal. App. 4th at 1213.  Significantly, however, "[t]he scope of a power of attorney depends on the language of the instrument, which is strictly construed . . . The scope of an attorney-in-fact's fiduciary responsibilities depends in each case on the terms of the power of attorney and the nature of the functions performed by the attorney-in-fact on behalf of the insured." *Id.* at 1214-15; *see also R&B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327, 364 (4th Dist. 2006)(same).[8]

Michael Anthony's fiduciary duties to Safeco, accordingly, were both defined and circumscribed by the terms of his agency agreement.  Concededly, those duties were limited to

---

[8] Although *Tran* involved an attorney-in-fact for an insurer, the principles articulated in *Tran* extend to the fiduciary duties of agents and attorneys-in-fact in all contexts. *See, e.g., Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (3d Dist. 2007)("an agent is a fiduciary *with respect to matters within the scope of the agency* . . . .")(emphasis added); *LaMonte v. Sanwa Bank California*, 45 Cal. App. 4th 509, 517 (2d Dist. 1996)(citing the same proposition, and stating that the "bank's duty as agent is limited to the scope of the agency set forth in the parties' agreement . . . .")(internal citations omitted).

signing the lease bonds pursuant to his powers of attorney and SSAs pursuant to Safeco's letters of authorization.  With respect to these delegated duties, Safeco has not pointed to the existence of any conflict between these duties and Anthony's role as CMC's representative.  In fact, Safeco has not challenged Anthony's conduct in executing the bonds and SSAs.  It apparently acknowledges that Anthony properly performed his duties in executing those documents.

Given Safeco's status as a sophisticated commercial surety, and its admitted knowledge of Anthony's role as a dual agent for both Safeco and CMC, it seems far-fetched in any event to suggest that Safeco believed that Anthony was performing work on behalf of CMC without compensation.  It would be more plausible to conclude that Safeco assumed Anthony was being compensated by CMC, but did not believe that his compensation was material to its decisions.[9]

Safeco, therefore, is not entitled to rescind the lease bonds based upon the dual agency of Michael Anthony.  As a matter of law, there is no set of facts under which Safeco could prevail upon its dual agency defense at trial.

## CONCLUSION

In light of the foregoing, it is hereby

ORDERED THAT Safeco's partial motion for summary judgment be, and the same hereby is denied; and Bank One's motion for partial summary judgment be, and the same hereby is granted.

So ordered.

---

[9] In the *CadleRock v. Royal Indemnity Co.* trial, 1:02CV16012, over which I recently presided, the evidence showed that the surety company anticipated collecting its premiums for the bonds with no risk to itself. Were the evidence in this case to be to the same effect, such could lead to the inference that Safeco, even if it knew that CMC was paying sizable commissions to Anthony, simply would not have cared about either the fact or extent of the commissions. How Anthony and CMC split their pie between them would not have affected Safeco's own portion.

<u>/s/ James G. Carr</u>
Sr. U.S. District Judge

90975-1

Case: 1:02-cv-16014-JGC  Doc #: 218  Filed:  05/31/12  16 of 16.  PageID #: 6729